## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

Impulse Communications, Inc.,

      Plaintiff,

      v.

Uplift Games LLC, Treetop Games LLC
and Lionfield Investments Ltd.,

      Defendants.

:
:
:
:
:
:
:
:
:
:

Case No. 1:24-cv-00166-JJM-LDA

## ANSWER AND COUNTERCLAIMS

Defendants Uplift Games LLC ("Uplift") Treetop Games LLC ("Treetop") and Lionfield Investments Ltd. ("Lionfield") (collectively, "Defendants"), by its undersigned counsel, hereby respond to and answer the complaint filed April 26, 2024, by plaintiff Impulse Communications, Inc. ("Impulse" or "Plaintiff") (the "Complaint"). To the extent the Complaint asserts factual allegations in its headings, Defendants deny those allegations. To the extent that any matters in the Complaint are not expressly admitted, they are denied. Defendants responds to all remaining factual allegations as follows:

## INTRODUCTION

Defendants deny the allegations in the Complaint's unnumbered introductory paragraph except Defendants admit that Plaintiff purports to bring this action against Defendants for trademark infringement under 15 U.S.C. §1125(a), common law trademark infringement, common law unfair competition, violation of the Anticybersquatting Consumer Protection Act ("ACPA"), violation of Rhode Island's Trademark Anti-Dilution statute (R.I.G.L. §6-2-12), and

that Plaintiff seeks injunctive relief, cancellation of Defendant's registered trademarks for the term "Adopt Me!," and monetary damages.

Plaintiff's claims of dilution of trademark by blurring, dilution of trademark by tarnishment, tortious interference with contractual relations and tortious interference with prospective business relations were voluntarily withdrawn by Plaintiff on September 11, 2024, in response to Defendants' Motion to Dismiss. (ECF 20-1 at 1).

Defendants specifically deny that they have infringed any valid and enforceable trademark owned by Plaintiff, deny that they engaged in any unfair competition, deny that they have violated the ACPA, deny that they have violated R.I.G.L. §6-2-12, deny that their trademark registrations should be canceled, and deny that Plaintiff is entitled to any relief.

## PARTIES

1.      Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

2.      Defendants admit that Uplift is a limited liability company organized under the laws of the State of Delaware. Defendants deny the remaining allegations in this paragraph.

3.      Defendants admit that Treetop is a limited liability company organized and existing under the laws of the State of Texas. Defendants deny the remaining allegations in this paragraph.

4.      Defendants admit that Lionfield is a private limited company organized and existing under the laws of the United Kingdom (England and Wales) with its registered office located at One London Square, Cross Lanes, Guildford, Surrey, United Kingdom GU1 1UN. Defendants deny the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

5.     Defendants admit that this Court has subject matter jurisdiction and/or supplemental jurisdiction over the claims asserted in the Complaint.

6.     Defendants admit that none of the Defendants or their constituent members are citizens of or incorporated in Rhode Island but deny that none are incorporated in Delaware. Defendants admit that there is complete diversity of citizenship between the parties located in the United States, that Lionfield is a citizen of a foreign state, and that the Court has diversity jurisdiction over the claims brought by Plaintiff. Defendants deny the remaining allegations in this paragraph.

7.     Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408 and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that the Court has personal jurisdiction over Defendants, that settlement negotiations did occur between the parties prior to the initiation of this action, that Uplift's Adopt Me! game is available to residents of Rhode Island through the Roblox online gaming platform (hereinafter, "Roblox"), and that Rhode Island residents have played the Adopt Me! game. Defendants deny all other allegations in this paragraph.

8.     Defendants admit that Adopt Me! branded toys and books are sold in Rhode Island. Defendants admit that McDonald's Happy Meals that included Adopt Me! toys were previously sold to McDonald's customers in Rhode Island. Defendants lack knowledge sufficient to admit or deny whether Hasbro is headquartered in Rhode Island. Defendants deny all other allegations in this paragraph.

9.     Defendants deny that Uplift's head of support has been a resident of Rhode Island since 2019.

10.     Defendants admit that this Court has personal jurisdiction over this action and that venue is proper. Defendants deny all other allegations in this paragraph.

## ALLEGED FACTS

### I.     Plaintiff's Alleged Business

11.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

12.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

13.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

14.     Whether the term Adopt Me is distinctive, suggestive, generic, or descriptive when used in connection with an online virtual pets game is a legal conclusion to which no response is required. To the extent a response is required, Defendants note that Plaintiff makes no distinction between inherent distinctiveness and acquired distinctiveness and therefore Defendants lack knowledge sufficient to admit or deny the allegations contained in this paragraph.

15.     As Plaintiff has neither secured federal registration nor asserted its purported trademark rights during the public opposition period for Defendant's federal trademark registration, Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

16.     Defendants admit that Plaintiff never took steps to register any purported trademark rights it may have once held, despite its current claims of significant value and

4

longstanding use. Defendants deny that Plaintiff continuously used the trademark Adopt Me in commerce since 2000 in a manner sufficient to establish common law trademark rights and affirmatively state that Plaintiff has taken numerous steps directly undermining this allegation. This includes, but is not limited to, posting a public notice to adoptme.com that it was "shutting down" and discontinuing use in commerce of goods/services bearing the Adopt Me trademark. *See* Exhibit 1. Defendants deny all other allegations contained in this paragraph.

17. Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

18. Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

19. Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph. Defendants do note, however, that their initial investigations into this allegation indicate that no such activity took place on adoptme.com from approximately May 2020 until approximately April 2024. Banner ads appear to have been added to adoptme.com mere days before Plaintiff initiated this action, the timing of which suggests it was done in bad faith and as a pretext to support Plaintiff's claims including, but not limited to, use in commerce.

20. Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that Plaintiff does not allege use outside of adoptme.com since the "mid-2000s," or approximately twenty (20) years prior to its current claim, except for use on social media, which commenced in September of 2020. *See* Exhibit 2 (screenshot of Adoptme.com Facebook page showing a creation date of September 11, 2020, a YouTube page showing a joined date of Sep 11, 2020, an Instagram page showing date joined of September 2020, and a Twitter (X) page showing adoptme.com joined September 2020).

5

21.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note the use claimed in this allegation is alleged to have occurred twenty (20) years prior to Plaintiff's current claim.

22.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that this allegation also refers to use nearly twenty (20) years prior to Plaintiff's current claim.

23.     Defendants deny that the third link tendered by Plaintiff resolves to any product offered by Plaintiff, historical or otherwise. Defendants admit that the first two (2) links tendered by Plaintiff do resolve to webpages that make historical reference to Plaintiff's plush toys from twenty (20) years ago but deny that such references constitute use as Plaintiff alleges. Defendants note that that the webpages tendered by Plaintiff in support of this and other use allegations contain the clear an unambiguous notice: "This item is NOT FOR SALE. We do not expect any further shipments of this item and are keeping it on our website for informational purposes only." (*Emphasis added in original.*) *See* Exhibit 3.

24.     Defendants deny the allegations in this paragraph.

25.     Defendants deny the allegations in this paragraph as their initial investigation indicates that Plaintiff's game did include objectionable content, including sexual references. *See* Exhibit 4 (screen shot from YouTube, https://www.youtube.com/watch?v=hzxdZLOCVFU, showing a video walk-through of Plaintiff's game in which, at the 4:20 mark of the video, it shows a profile for Creature the Goldfish in which the pre-populated pull down menu to answer the question "one thing I like the most" includes "sex" and, at the 5:51 mark of the video, shows other groups that include "cuties hot group").

26.      Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph. Defendants note that initial investigations suggest that Plaintiff's product allows for both interaction and communication among users and an option for a multiplayer game.  *See* Exhibit 4 (screen shot from YouTube, https://www.youtube.com/watch?v=hzxdZLOCVFU, showing a video walk-through of Plaintiff's product with a link to "multiplayer games" at the 4:08 mark of the video and  links to connect to other groups at the 5:51 mark of the video).

27.      Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that Plaintiff asserts decades-old information to support purported common law trademark rights for an action filed in 2024.

28.      Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that Plaintiff again asserts decades-old information to support purported common law trademark rights for an action filed in 2024.

29.      Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that Plaintiff again asserts decades-old information to support purported common law trademark rights for an action filed in 2024.

30.      Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that Plaintiff again asserts decades-old information to support purported common law trademark rights for an action filed in 2024.

31.      Defendants deny the allegations in this paragraph.

32.      Defendants admit that this paragraph includes links purporting to reference Plaintiff's Adopt Me product that were allegedly posted between 2009 and 2016. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph, including, but

not limited to, the authenticity, veracity, creation date, revision date, and/or posting date of such links.

33.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that none of the purported emails referenced in this allegation refer to any commercial use of Plaintiff's "Adopt Me game" after 2012.

34.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that Plaintiff's efforts to launch an "Adopt Me app" occurred approximately three to four years after Defendants launched Adopt Me! and after Plaintiff posted a public statement to adoptme.com that it was "shutting down."

35.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that Plaintiff's launch of a "completely new Adopt Me website and game" occurred nearly four (4) years after Defendants launched Adopt Me!.

36.    Defendants admit that this paragraph includes a link to what is purported to be a press release announcing new Adopt Me pets nearly five (5) years after Defendants launched Adopt Me!  and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services. Defendants lack knowledge sufficient to admit or deny all other allegations in this paragraph.

37.    Defendants admit that this paragraph includes a link to what is purported to be an Adopt Me music video nearly five (5) years after Defendants launched Adopt Me!  and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services. Defendants lack knowledge sufficient to admit or deny all other allegations in this paragraph.

38.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly five (5) years after Defendants launched Adopt Me! and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

39.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly five (5) years after Defendants launched Adopt Me!  and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services. Defendants further note that, if true, this allegation is an indication of the dissimilarity of Plaintiff's goods and services to those of Defendants, as NFTs and cryptocurrency are not products offered by Defendants.

40.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly five (5) years after Defendants launched Adopt Me! and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

41.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly five (5) years after Defendants launched Adopt Me!  and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

42.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly five (5) years after Defendants launched Adopt Me!  and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

Defendants further note that, if true, this allegation is an indication of the dissimilarity of Plaintiff's goods and services to those of Defendants.

43.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred over five (5) years after Defendants launched Adopt Me! and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

44.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred over five (5) years after Defendants launched Adopt Me!  and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

45.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly six (6) years after Defendants launched Adopt Me! and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services. Defendants further note that in a Reddit post under a user name "impulsecorp," a person purporting to be an operator of AdoptMe.com expresses an intention to imitate Defendants' senior use of a metaverse game on Roblox by stating, "My plan is to make it more like Minecraft and Roblox, where you can build on your land. I am also going to have it so you can create their own 3D role playing game (probably involving food fighting with your pet, since I need to keep the site as non-violent as possible due to young kids playing it)." *See* Exhibit 5, which consists of a screenshot of https://www.reddit.com/r/metaverse/comments/scvqp3/adoptme_virtual_pets_metaverse/.

46.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the alleged actions occurred nearly six (6) years after Defendants launched

Adopt Me! and after the priority date of Defendants' United States trademark registration of Adopt Me! for use in connection with, *inter alia*, online gaming services.

47.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

48.    Defendants deny the allegations in this paragraph.

**II. Defendant's Allegedly Unlawful Activities**

49.    Defendants admit that they develop and market video games only accessible inside of the third party Roblox environment. Defendants deny the remaining allegations in this paragraph.

50.    Defendants admit that Uplift operates its Adopt Me! game on the Roblox gaming platform. Defendants deny all other allegations in this paragraph.

51.    Defendants admit that their game was launched in Roblox in 2017. Defendants deny all other allegations in this paragraph.

52.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

53.    Defendants admit that playadopt.me was registered on September 17, 2017 but deny that the Adopt Me! game can be played at the referenced domain name. Defendants deny all other allegations in this paragraph.

54.    Defendants deny the allegations in this paragraph.

55.    Defendants deny that Plaintiff owned trademark rights in and to Adopt Me when Defendants began using the name as Plaintiff did not have use sufficient to establish and/or maintain common law trademark rights.

56.    Defendants deny the allegations in this paragraph.

57.     Defendants deny the allegations in this paragraph.

58.     Defendants admit that Adopt Me! is presently among the most popular games on the Roblox platform, attracting billions of visits a year. Defendants deny all other allegations in this paragraph.

59.     Defendants admit that "adopt[ing], rais[ing], trad[ing] and collect[ing] legendary pets" is included in the description of the Adopt Me! game on Roblox.com. Defendants admit that Uplift posted a job description on June 3, 2024 that described Adopt Me! as the premier pet adoption game on Roblox. Defendants deny all other the allegations in this paragraph.

60.     Defendants deny the allegations in this paragraph and affirmatively state that Plaintiff's admission in paragraph 39 that its product contains options for NFTs and cryptocurrency demonstrates that Plaintiff's product is specifically targeted to adults and not children.

61.     Defendants deny the allegations in this paragraph.

62.     Defendants deny the allegations in this paragraph.

63.     Defendants admit that team members have occasionally omitted an exclamation point when referring to the Adopt Me! game in textual portions of written communications regarding Defendants' products for syntax reasons. Defendants deny all other allegations in this paragraph.

64.     Defendants admit that team members have occasionally omitted an exclamation point when referring to the Adopt Me! game in textual portions of written communications regarding Defendants' products for syntax reasons. Defendants deny all other allegations in this paragraph.

65.    Defendants admit that people unaffiliated with Defendants have occasionally omitted an exclamation point when referring to the Adopt Me! game in textual portions of written communications regarding Defendants' products. Defendants deny all other allegations in this paragraph.

66.    Whether an exclamation mark differentiates the parties' respective marks such that confusion is unlikely is a legal conclusion requiring an examination of numerous factors to which no response is required. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

67.    Defendants admit that Adopt Me! toys have been sold at Target, Walmart, and Amazon.com. Defendants affirmatively state that Plaintiff's own admissions and information already submitted to this Court indicate that it has not sold such toys since "the mid-2000s" and lack any federal or state trademark registrations for such products. Plaintiff cannot in good faith rely on sales discontinued decades prior to now claim common law rights for such products. Defendants deny all other allegations in this paragraph.

68.    Defendants admit that, through a license with Roblox, certain Adopt Me! intellectual property has been licensed to Hasbro and that McDonald's Happy Meals that included Adopt Me! toys were previously sold to McDonald's customers. Defendants deny all other allegations in this paragraph.

69.    Defendants admit that their game is available on the Roblox website and the Roblox iOS app, along with millions of other games unrelated to Defendants' game, but affirmatively state that Plaintiff's product is not available through this channel of trade. Defendants deny the remaining allegations contained in this paragraph.

70.    Defendants deny the allegations in this paragraph.

71.     Whether Plaintiff has use sufficient to establish the common law trademark rights it purports to own, whether any such rights that may exist are senior to those of Defendants, and whether likelihood of confusion exists are all legal conclusions requiring the examination of numerous factors and to which no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

72.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

73.     Defendants deny the allegations in this paragraph and affirmatively state that, should any confusion exist between Plaintiff's and Defendants' products, such confusion is the result of Plaintiff's actions after it abandoned any trademark rights it may have once held. Defendants further affirmatively state that no such confusion is possible for offline products, such as plush toys, as Plaintiff voluntarily discontinued offering such products for sale in "the mid-2000s," over a decade before Defendants began use of the contested mark for offline products.

74.     Defendants deny the allegations in this paragraph.

75.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

76.     Defendants deny the allegations in this paragraph.

### III.    Defendants' Attempt to Purchase Plaintiff's AdoptMe.com Domain

77.     Defendants admit that correspondence relating to a potential purchase of the adoptme.com domain occurred prior to Plaintiff's initiation of this action. Defendants deny the remaining allegations in this paragraph.

78.     Defendants admit that Plaintiff's posting of a public statement that it was "shutting down" precipitated the exchange of correspondence relating to a potential purchase of the

adoptme.com domain name. *See* <u>Exhibit 1</u>. Defendants deny the remaining allegations in this paragraph.

79.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408 and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants affirmatively state, on information and belief, that Plaintiff abandoned its purported common law rights in and to Adopt Me, and after such abandonment by Plaintiff, Defendants established itself as the senior user of the contested mark. Defendants deny the remaining allegations in this paragraph.

80.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408 and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants deny that Plaintiff possessed any common law trademark rights to assert and had, in fact, abandoned any such rights that may have existed prior to Defendant establishing itself as the senior user of Adopt Me!. Defendants deny the remaining allegations in this paragraph.

81.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

82.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that settlement negotiations did occur between the parties prior to the initiation of this action. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

83.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408 and Plaintiff's attempt to introduce the

contents of such negotiations. Without waiving this objection, Defendants admit that their counsel, Morrison Rothman LLP, engaged in negotiations over a potential sale of the AdoptMe.com domain name with Plaintiff on Defendants' behalf. Without waiving its objection, Defendants deny that these negotiations either recognized or negotiated for any purported trademark rights of Plaintiff and deny all remaining allegations in this paragraph.

84.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

85.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that negotiations to purchase the domain name adoptme.com ended in 2020, nearly four (4) years prior to Plaintiff bringing this action. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

86.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

87.    Defendants admit that the link provided by Plaintiff resolves to a screenshot. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph, including, but not limited to, the authenticity, veracity, creation date, revision date, and/or posting date of such screenshot.

88.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that Defendants' counsel, Morrison Rothman LLP, engaged in settlement negotiations involving a potential sale of

the AdoptMe.com domain with Plaintiff on Defendants' behalf. Defendants deny all other allegations in this paragraph.

89.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that their counsel, Morrison Rothman LLP, engaged in settlement negotiations involving a potential sale of the AdoptMe.com domain with Plaintiff on Defendants' behalf. To the extent an answer is required, Defendants deny that Plaintiff indicated that any product was about to "relaunch."

90.    Defendants admit the parties had no further communication for nearly four (4) years until Plaintiff initiated the current legal action. During these years, Defendants made significant investments in Adopt Me!

## IV.    Defendants' Subsequent Registration of Trademark

91.    Defendants admit that, on February 4, 2021, Treetop and Lionfield applied for a federally registered trademark for Adopt Me! for use in connection with downloadable games and software and that this mark registered on January 25, 2022. Defendants deny all other allegations in this paragraph.

92.    Defendants admit that, on March 9, 2022, Treetop and Lionfield applied for a federally registered trademark for Adopt Me! for use in connection with goods and services including toys, books, stickers, and backpacks, and that this mark registered on August 8, 2023. Defendants deny all other allegations in this paragraph.

93.    Defendants deny the allegations in this paragraph.

94.    Defendants admit that Treetop and Lionfield license the Adopt Me! trademark to Uplift. Defendants deny all other allegations in this paragraph.

17

95.     Defendants deny the allegations in this paragraph and affirmatively state that Plaintiff's prior public notice that it was "shutting down" adoptme.com and directing traffic to boredhumans.com contradicts the allegations contained in this paragraph. *See* <u>Exhibit 1</u>.

96.     Defendants deny the allegations in this paragraph and affirmatively state that Plaintiff's prior public notice that it was "shutting down" adoptme.com and directing traffic to boredhumans.com contradicts the allegations contained in this paragraph.

97.     Defendants deny the allegations in this paragraph and affirmatively state that Plaintiff's prior public notice that it was "shutting down" adoptme.com and directing traffic to boredhumans.com contradicts the allegations contained in this paragraph.

98.     Defendants deny the allegations in this paragraph and affirmatively state that the public notice posted by Plaintiff to its own website specifically uses the terms "shutting down" in reference to adoptme.com.

99.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and affirmatively state that a public pronouncement of abandonment is not mitigated by subjective, privately held hopes or aspirations.

100.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

101.     Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

102.     Defendants deny that they have engaged in any trademark violations or disrupted any business plans of Plaintiff. Defendants admit that, upon Plaintiff publicly stating that it was "shutting down" adoptme.com, Plaintiff did, in fact, shut its product down. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

103.    Defendants admit the popularity of their product increased in 2020 but deny such popularity was solely attributable to the COVID-19 lockdown, as the popularity of their product continues to this day. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

104.    Defendants admit that Plaintiff did, in fact, cease use of and/or shut down its Adopt Me product. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

105.    Defendants deny the allegations in this paragraph.

106.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and affirmatively state that simply owning a domain name in and of itself does not constitute use sufficient to establish and/or maintain common law trademark rights.

107.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

108.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

109.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and affirmatively state that simply owning a domain name in and of itself does not constitute use sufficient to establish and/or maintain common law trademark rights.

110.    Defendants deny the allegations in this paragraph and affirmatively state that the public notice posted by Plaintiff states, in relevant part, "We are very sorry, but after almost 20 years online, AdoptMe.com is shutting down. Please go to our new site instead at **BoredHumans.com** which has more than **40 fun and silly artificial intelligence (AI) pages** you can use for free online." (***Emphasis in original.***) *See* <u>Exhibit 1</u>.

111.    Defendants deny that the privately held hopes and aspirations of Plaintiff take precedence over the relevant consuming public's understanding of Plaintiff's public notice when determining the issue of abandonment. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

112.    Defendants admit the allegations in this paragraph.

113.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that Defendants' counsel, Morrison Rothman LLP, engaged in settlement negotiations involving a potential sale of the AdoptMe.com domain with Plaintiff on Defendants' behalf. To the extent an answer is required, Defendants deny the allegations in this paragraph.

114.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that their counsel, Morrison Rothman LLP, engaged in settlement negotiations involving a potential sale of the AdoptMe.com domain with Plaintiff on their behalf. To the extent an answer is required, Defendants deny the allegations in this paragraph.

115.    Defendants deny the allegations in this paragraph.

116.    Defendants admit that settlement negotiations did occur between the parties prior to the initiation of this action and affirmatively state that the referenced correspondence was sent to Plaintiff shortly after its public proclamation that it was "shutting down" adoptme.com. A review of the full text of that notice indicates it contains allegations of confusion. Any reference to confusion in the correspondence was in response to these unverified allegations as mere

pleasantries in an effort to find common ground with Plaintiff in potential negotiations. Defendants deny the remaining allegations in this paragraph.

117.    The allegations in this paragraph call for a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that the relevant language to which Plaintiff refers is qualified by the phrase "to the best of Applicant's knowledge," which it satisfied through a review of Plaintiff's own recently issued public statement of abandonment. Any obligation with respect to other purported third-party rights is outside the scope of Plaintiff's allegations, and Defendants deny the remaining allegations in this paragraph.

118.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that settlement negotiations did occur between the parties prior to the initiation of this action. Defendants deny the remaining allegations in this paragraph.

119.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that settlement negotiations did occur between the parties prior to the initiation of this action. Defendants deny the remaining allegations in this paragraph.

**V. Alleged Confusion Between Marks and Alleged Damage to Plaintiff's Mark**

120.    Defendants deny the allegations in this paragraph.

121.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

122.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph. Defendants note that initial investigations suggest that Plaintiff's product allows for user interaction. *See* <u>Exhibit 4</u> (screen shot from YouTube, https://www.youtube.com/watch?v=hzxdZLOCVFU, showing a video walk-through of Plaintiff's product with a link to "multiplayer games" at the 4:08 mark of the video and links to connect to other groups at the 5:51 mark of the video).

123.    Defendants admit that its online product is only available through an unaffiliated, third-party metaverse gaming platform known as Roblox, which hosts a chat feature for registered Roblox users subject to age verification, parental permissions, parental controls, and other safety features that are built into the Roblox platform and available across the tens of millions of metaverse games available on Roblox, including Adopt Me!

124.    Defendants lack knowledge sufficient to admit or deny any negative consequences for unrelated third parties, such as Plaintiff and Roblox. Defendants deny all other allegations in this paragraph.

125.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph but note that the Plaintiff's allegation that web traffic to adoptme.com increased is inconsistent with the allegation in paragraph 130 that web traffic decreased.

126.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph, including, but not limited to, the authenticity, veracity, creation date, revision date, and/or receipt date of such correspondence.

127.    Defendants deny that the links at https://www.youtube.com/watch?app=desktop&v=5_NR3CXVnSY and https://www.instagram.com/adoptme_play/?igsh=Z3d2aXBwMmljb2gy are active or contain any

content. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph, including, but not limited to, the authenticity, veracity, creation date, revision date, and/or posting date of such links.

128.    Defendants deny there is an active link located at https://www.reddit.com/r/tipofmytongue/comments/18jggi7/tomt_website_early_2000s_adopt_me_not_roblox/. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph, including, but not limited to, the authenticity, veracity, creation date, revision date, and/or posting date of such links.

129.    Defendants deny that Plaintiff is the senior user of Adopt Me and that difficulty finding Plaintiff's game online is in any way connected to Defendants. Defendants further note that initial investigation indicates that Plaintiff's website was not the #1 search result for the term "Adopt Me" in 2017. *See* Exhibit 6, (keyword analytics from www.semrush.com for "Adopt me" in June 2017 and July 2017). Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

130.    Defendants deny the inability to locate Plaintiff's Adopt Me product is in any way connected to Defendants. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph but note that the Plaintiff's allegation that web traffic to Plaintiff's website decreased is inconsistent with the allegation in paragraph 125 that web traffic to adoptme.com increased.

131.    Defendants deny the allegations in this paragraph, including, but not limited to, Plaintiff's implication that Defendants are associated with the types of behaviors alleged by Plaintiff.

132.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the message Plaintiff attempts to use as an allegation is nonsensical and lacking the basic information necessary to be viewed credibly.

133.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph and note that the message Plaintiff attempts to use as an allegation is nonsensical and lacking a factual basis necessary to be viewed credibly as actual currency (800 dollars in this case) cannot be transferred between participants in Defendants' Adopt Me! game.

134.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

135.    Defendants admit that the link provided by Plaintiff resolves to a Wikipedia page discussing "trust trades." Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph. Defendants affirmatively state that the type of activity to which Plaintiff refers requires mutual consent between independent users of its product.

136.    Defendants deny the allegations in this paragraph.

137.    Defendants lack knowledge sufficient to admit or deny Plaintiff's search and the related results. Defendants' initial investigation of this allegation has uncovered the following post,        to        which        Defendants        believe        Plaintiff        refers: https://www.reddit.com/r/RobloxAdoptme/comments/fxcdv0/adopt_me_sucks/.        Defendants deny that this post in any way relates to pedophilia associated with Defendants' Adopt Me! game. Defendants further note that Plaintiff's allegation, even though unsubstantiated, refers to a Discord conversation, which is an unrelated third party offering a voice and chat application unrelated to Defendants.

138.    Defendants lack knowledge sufficient to admit or deny Plaintiff's search and the related results. Defendants' initial investigation of this allegation has uncovered the following posts, to which Defendants believe Plaintiff refers:

1)    https://www.mysocialife.com/roblox-child-predators/.  Defendants deny Plaintiff's allegation that this article in any way implicates Adopt Me! and affirmatively states that the entire article is about the Roblox environment and only mentions Adopt Me! as one of the most popular games on Roblox for reader reference.

2) https://www.youtube.com/watch?v=owRsON7aT5o. Defendants deny that this video involves rape or other abhorrent acts as Plaintiff alleges. The video found at this link is of a player in Adopt Me! being picked up by a "family member" for a nap, feeding, movie, and other care-type activities.

3)    https://techcrunch.com/2018/07/18/roblox-responds-to-the-hack-that-allowed-a-childs-avatar-to-be-raped-in-its-game/. Defendants deny this article references Adopt Me! in any manner whatsoever, let alone as a place for child exploitation as Plaintiff alleges.

Defendants deny all remaining allegations contained in this paragraph.

139.    The allegations in this paragraph were stricken pursuant to the Court's December 23, 2024 Order on Defendants' Motion to Strike at ECF No. 29 (the "Order on MTS"). No response is required.

140.    The allegations in this paragraph were stricken pursuant to the Order on MTS. No response is required.

141.    The allegations in this paragraph were stricken pursuant to the Order on MTS. No response is required.

142.    Defendants deny the allegations in this paragraph, including, but not limited to, Plaintiff's implication that Defendants are associated with the types of behaviors alleged by Plaintiff.

143.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph. Defendants note that Plaintiff references two legal actions where Plaintiff was confused for an unrelated third-party and not Defendants.  Defendants deny that should Plaintiff be incorrectly named in a legal action involving Defendants that it would be "forced to expend much time and effort" to remedy the situation.

144.    Defendants deny the allegations in this paragraph.

145.    Defendants deny the allegations in this paragraph.

146.    The allegations in this paragraph were stricken pursuant to the Order on MTS. No response is required.

147.    Defendants deny the allegations in this paragraph.

148.    Defendants deny the allegations in this paragraph.

149.    Defendants deny the allegations in this paragraph and note Plaintiff again conflates third party Roblox with Defendants.

150.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

151.    The allegations in this paragraph were stricken pursuant to the Order on MTS. No response is required.

152.    The allegations in this paragraph were stricken pursuant to the Order on MTS. No response is required.

153.    The allegations in this paragraph were stricken pursuant to the Order on MTS. No response is required.

154.    Defendants deny the allegations in this paragraph.

## COUNT I – ALLEGED TRADEMARK INFRINGEMENT UNDER 15 U.S.C. 1125(a)

155.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 154 above.

156.    Defendants deny the allegations in this paragraph.

157.    Defendants deny the allegations in this paragraph

158.    Whether the term Adopt Me is distinctive, either inherently or through use, when used in connection with Plaintiff's product is a legal conclusion to which no response is required. To the extent a response is required, Defendants lack sufficient knowledge to admit or deny Adopt Me is distinctive as to Plaintiff's product, as Plaintiff has never filed for trademark protection for Adopt Me, and a distinctiveness determination for unregistered trademarks requires additional evidence not provided by Plaintiff.

159.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

160.    Defendants deny the allegations in this paragraph.

161.    Defendants deny the allegations in this paragraph.

162.    Defendants deny the allegations in this paragraph.

Defendants admit that Plaintiff seeks damages, including actual, consequential, and punitive damages, disgorgement of profits and a royalty for use of the Adopt Me mark, equitable relief, a declaratory judgment that Defendants' mark is invalid, cancellation of the federal

registration of Defendants' mark, costs, attorneys' fees, interest, and all other relief this Court deems proper. Defendants deny that Plaintiff is entitled to this relief or any relief whatsoever.

## COUNT II – ALLEGED DILUTION OF TRADEMARK BY BLURRING (15 U.S.C. 1125(c))

163.    Claim withdrawn. No response required.

164.    Claim withdrawn. No response required.

165.    Claim withdrawn. No response required.

166.    Claim withdrawn. No response required.

167.    Claim withdrawn. No response required.

168.    Claim withdrawn. No response required.

169.    Claim withdrawn. No response required.

170.    Claim withdrawn. No response required.

171.    Claim withdrawn. No response required.

172.    Claim withdrawn. No response required.

173.    Claim withdrawn. No response required.

174.    Claim withdrawn. No response required.

175.    Claim withdrawn. No response required.

Claim withdrawn. Defendants deny that Plaintiff is entitled to any relief.

## COUNT III – ALLEGED DILUTION OF TRADEMARK BY TARNISHMENT (15 U.S.C. 1125(c)

176.    Claim withdrawn. No response required.

177.    Claim withdrawn. No response required.

178.    Claim withdrawn. No response required.

179.    Claim withdrawn. No response required.

180.    Claim withdrawn. No response required.

181.    Claim withdrawn. No response required.

182.    Claim withdrawn. No response required.

183.    Claim withdrawn. No response required.

184.    Claim withdrawn. No response required.

185.    Claim withdrawn. No response required.

186.    Claim withdrawn. No response required.

187.    Claim withdrawn. No response required.

188.    Claim withdrawn. No response required.

Claim withdrawn. Defendants deny that Plaintiff is entitled to any relief.


## COUNT IV – ALLEGED VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. 1125(d)

189.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 188 above.

190.    Defendants deny the allegations in this paragraph.

191.    Whether Plaintiff has common law trademark rights for a "virtual pets game" is a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny that Plaintiff owned any purported common law trademark rights for a "virtual pets game" during the relevant time periods.  Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

192.    Whether the term Adopt Me is distinctive, either inherently or through use, when used in connection with Plaintiff's product is a legal conclusion to which no response is required.

To the extent a response is required, Defendants lack sufficient knowledge to admit or deny Adopt Me is distinctive as to Plaintiff's product, as Plaintiff has never filed for trademark protection for Adopt Me, and a distinctiveness determination for unregistered trademarks requires additional evidence not provided by Plaintiff.

193.    Defendants deny the allegations in this paragraph and note that Plaintiff's own submissions undermine any allegation that Plaintiff's product is either famous or widely recognized by the general consuming public.

194.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph but note Plaintiff's admission that it has not used Adopt Me on plush toys or other offline products since the "mid-2000s," decades before Defendants began using Adopt Me!, undermines the veracity of this allegation. Defendants further note that their initial investigation indicates that Plaintiff only began using social media for Adopt Me in September of 2020. *See* Exhibit 2 (screenshot of Adoptme.com Facebook page showing a creation date of September 11, 2020, a YouTube page showing a joined date of Sep 11, 2020, an Instagram page showing date joined as September 2020, and a Twitter (X) page showing adoptme.com joined September 2020).

195.    Defendants deny the allegations in this paragraph.

196.    Defendants deny the allegations in this paragraph.

197.    Defendants deny the allegations in this paragraph.

198.    Defendants deny the allegations in this paragraph.

199.    Defendants deny the allegations in this paragraph.

200.    Defendants deny the allegations in this paragraph.

201.     Defendants deny the allegations in this paragraph, including, but not limited to, Plaintiff's implication that Defendants are associated with the types of behaviors alleged by Plaintiff.

202.     Defendants admit the allegations in this paragraph.

203.     Defendants deny the allegations in this paragraph.

204.     Defendants deny the allegations in this paragraph.

205.     Defendants deny the allegations in this paragraph.

206.     Whether Plaintiff held trademark rights is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

207.     Defendants deny the allegations in this paragraph.

208.     Defendants deny the allegations in this paragraph and note Defendants' Adopt Me! game cannot be played at either of these domains.

209.     Defendants deny the allegations in this paragraph.

210.     Defendants deny the allegations in this paragraph.

211.     Defendants deny the allegations in this paragraph.

212.     Defendants deny the allegations in this paragraph.

213.     Defendants deny the allegations in this paragraph.

214.     Defendants deny the allegations in this paragraph.

215.     Defendants admit that Plaintiff seeks damages, including actual, consequential, and punitive damages, disgorgement of profits and a royalty for use of Plaintiff's mark, equitable relief, forfeiture or cancellation of the playadopt.me and playadoptme.com domains or transfer of these domain names to the Plaintiff, costs, attorneys' fees, interest, and all other relief this Court deems proper. Defendants deny that Plaintiff is entitled to this relief or any relief whatsoever.

**<u>COUNT V – ALLEGED COMMON LAW TRADEMARK INFRINGEMENT</u>**

216.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 215 above.

217.    Defendants deny the allegations in this paragraph.

218.    Defendants deny the allegations in this paragraph.

219.    Whether the term Adopt Me is distinctive, either inherently or through use, when used in connection with Plaintiff's product is a legal conclusion to which no response is required. To the extent a response is required, Defendants lack sufficient knowledge to admit or deny Adopt Me is distinctive as to Plaintiff's product, as Plaintiff has never filed for trademark protection for Adopt Me, and a distinctiveness determination for unregistered trademarks requires additional evidence not provided by Plaintiff.

220.    Defendants deny the allegations in this paragraph.

221.    Defendants deny the allegations in this paragraph.

222.    Defendants deny the allegations in this paragraph.

Defendants admit that Plaintiff seeks damages, including actual, consequential, and punitive damages, disgorgement of profits and a royalty for use of the Adopt Me mark, equitable relief, a declaratory judgment that Defendants' mark is invalid, cancellation of the federal registration of Defendants' mark, costs, attorneys' fees, interest, and all other relief this Court deems proper. Defendants deny that Plaintiff is entitled to this relief or any relief whatsoever.

**<u>COUNT VI – ALLEGED COMMON LAW UNFAIR COMPETITION</u>**

223.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 222 above.

224.    Defendants deny the allegations in this paragraph.

225.    Defendants deny the allegations in this paragraph.

226.    Whether the term Adopt Me is distinctive, either inherently or through use, when used in connection with Plaintiff's product is a legal conclusion to which no response is required. To the extent a response is required, Defendants lack sufficient knowledge to admit or deny Adopt Me is distinctive as to Plaintiff's product, as Plaintiff has never filed for trademark protection for Adopt Me, and a distinctiveness determination for unregistered trademarks requires additional evidence not provided by Plaintiff.

227.    Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

228.    Defendants deny the allegations in this paragraph.

229.    Defendants deny the allegations in this paragraph.

230.    Defendants deny the allegations in this paragraph.

Defendants admit that Plaintiff seeks damages, including actual, consequential, and punitive damages, disgorgement of profits and a royalty for use of the Adopt Me mark, equitable relief, a declaratory judgment that Defendants' mark is invalid, cancellation of the federal registration of Defendants' mark, costs, attorneys' fees, interest, and all other relief this Court deems proper. Defendants deny that Plaintiff is entitled to this relief or any relief whatsoever.

### COUNT VII – ALLEGED VIOLATION OF THE RHODE ISLAND TRADEMARK ANTI-DILUTION STATUTE (R.I.G.L. §6-2-12)

231.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 230 above.

232.    Defendants deny the allegations in this paragraph.

233.    Whether the term Adopt Me is distinctive, either inherently or through use, when used in connection with Plaintiff's product is a legal conclusion to which no response is required.

To the extent a response is required, Defendants lack sufficient knowledge to admit or deny Adopt Me is distinctive as to Plaintiff's product, as Plaintiff has never filed for trademark protection for Adopt Me, and a distinctiveness determination for unregistered trademarks requires additional evidence not provided by Plaintiff.

234.    Defendants deny the allegations in this paragraph and note that Plaintiff's own submissions undermine any allegation that the general consuming public views Adopt Me as a designation of source for Plaintiff's product.

235.    Defendants lack sufficient knowledge to admit or deny the allegations in this paragraph but note Plaintiff's admission that it has not used Adopt Me on plush toys or other offline products since the "mid-2000s," decades before Defendants began using the ADOPT ME! mark, undermines the veracity of this allegation. Defendants further note that their initial investigation indicates that Plaintiff only began using social media for Adopt Me in September of 2020. *See* Exhibit 2 (screenshot of Adoptme.com Facebook page showing a creation date of September 11, 2020, a YouTube page showing a joined date of Sep 11, 2020, an Instagram page showing date joined as September 2020, and a Twitter (X) page showing adoptme.com joined September 2020).

236.    Defendants deny the allegations in this paragraph.

237.    Defendants deny the allegations in this paragraph.

238.    Defendants deny the allegations in this paragraph.

239.    Whether the parties' marks are confusingly similar is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that both Plaintiff's and Defendants' products are offered through the same channels of trade, as Defendants' product is offered in Roblox, a third-party virtual environment, and Plaintiff's is not.

240.    Whether consumer confusion exists is a legal conclusion requiring an examination of numerous factors to which no response is required. To the extent a response is required, Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph.

241.    Defendants deny the allegations in this paragraph.

242.    Defendants deny the allegations in this paragraph.

Defendants admit that Plaintiff seeks equitable relief, costs, attorneys' fees, interest, and all other relief this Court deems proper. Defendants deny that Plaintiff is entitled to this relief or any relief whatsoever.

## COUNT VIII – ALLEGED TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

243.    Claim withdrawn. No response required.

244.    Claim withdrawn. No response required.

245.    Claim withdrawn. No response required.

246.    Claim withdrawn. No response required.

247.    Claim withdrawn. No response required.

248.    Claim withdrawn. No response required.

249.    Claim withdrawn. No response required.

250.    Claim withdrawn. No response required.

251.    Claim withdrawn. No response required.

252.    Claim withdrawn. No response required.

Claim withdrawn. Defendants deny that Plaintiff is entitled to any relief.

## COUNT IX – ALLEGED TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

253.    Claim withdrawn. No response required.

254.    Claim withdrawn. No response required.

255.    Claim withdrawn. No response required.

256.    Claim withdrawn. No response required.

257.    Claim withdrawn. No response required.

258.    Claim withdrawn. No response required.

259.    Claim withdrawn. No response required.

260.    Claim withdrawn. No response required.

261.    Claim withdrawn. No response required.

262.    Claim withdrawn. No response required.

263.    Claim withdrawn. No response required.

264.    Claim withdrawn. No response required.

Claim withdrawn. Defendants deny that Plaintiff is entitled to any relief.

## COUNT X – PLAINTIFF'S PETITION FOR CANCELLATION OF TRADEMARKS

265.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 264 above.

266.    Defendants deny that Serial No. 90509103 was filed on February 4, 2020. Defendants admit the remaining allegations in this paragraph.

267.    Defendants admit the allegations in this paragraph.

268.    Defendants admit the allegations in this paragraph.

269.    Defendants deny the allegations in this paragraph.

270.    Defendants deny the allegations in this paragraph.

271.    Defendants admit that the statement "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark

in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive" was made to the PTO through Defendants' counsel during the trademark prosecution process. Defendants deny that any false representation was made to the PTO and deny all other allegations in this paragraph.

272.    Defendants deny the allegations in this paragraph.

273.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants admit that settlement negotiations did occur between the parties prior to the initiation of this action. Defendants deny these settlement discussions were instituted as a result of Plaintiff's use of adoptme.com and affirmatively state that it was Plaintiff's public statement that it was "shutting down" that led to the initiation of these discussions.

274.    Defendants object to the inclusion of information regarding negotiations between the parties governed by Federal Rule of Evidence 408, and Plaintiff's attempt to introduce the contents of such negotiations. Without waiving this objection, Defendants deny the allegations in this paragraph.

275.    Defendants deny the allegations in this paragraph.

276.    Defendants deny the allegations in this paragraph.

277.    Defendants deny the allegations in this paragraph. Defendants also note Plaintiff's overapplication of its purported rights as somehow applicable to the full list of goods and services claimed in the referenced applications. Defendants affirmatively state that, even if Plaintiff's false representation claims were true, which Defendants deny, such false representation would be

limited to the narrow scope of goods and services to which Plaintiff purportedly had common law rights and not the full scope of the goods and services claimed in the applications.

278.    Defendants deny the allegations in this paragraph.

279.    Whether third parties would expect licensing agreements to be based on registered marks is a hypothetical factual conclusion to which no response is required. To the extent a response is required, Defendants deny all allegations in this paragraph.

280.    Defendants deny the allegations in this paragraph. Defendants also note Plaintiff's overapplication of its purported rights as somehow applicable to the full list of goods and services claimed in the referenced applications. Defendants affirmatively state that, even if Plaintiff's false representation claims were true, which Defendants deny, such false representation would be limited to the narrow scope of goods and services to which Plaintiff purportedly had common law rights and not the full scope of the goods and services claimed in the applications.

Defendants admit that Plaintiff seeks to cancel USPTO Trademark registration Nos. 6626699 and 7130097 and Trademark Application Serial No. 98128774. Defendants deny that Plaintiff is entitled to this relief or any relief whatsoever.

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to the relief it seeks in its Prayer for Relief or any relief whatsoever.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Defendants admit that Plaintiff seeks a trial by jury on all issues so triable but deny that Plaintiff is entitled to any relief.

38

## AFFIRMATIVE OR ADDITIONAL DEFENSES

Without assuming any burden of proof that it would not otherwise bear under applicable law, and without limitation as to any and all other affirmative and additional defenses that it has, including those that subsequently may arise in this action, Defendants assert the following affirmative or additional defenses to Plaintiff's claims:

## FIRST AFFIRMATIVE DEFENSE

### (Abandonment)

Plaintiff's claims are barred, in whole or in part, because Plaintiff abandoned all rights it purports to have in the ADOPT ME trademark.

## SECOND AFFIRMATIVE DEFENSE

### (Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

### (Acquiescence)

Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence.

## FIFTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations for all claims it makes based on long-since discontinued sales in the "mid-2000s" of offline products, including, but not limited to, plush toys.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to add additional defenses and amend the foregoing affirmative defenses as additional facts become known through discovery.

## COUNTERCLAIMS

For its counterclaims against Plaintiff and Counterclaim Defendant Impulse, Defendants and Counterclaim Plaintiffs state and allege as follows:

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT OF ABANDONMENT

1.      Defendants and Counterclaim Plaintiffs reassert and incorporate by reference their responses to paragraphs 1 through 280 of the Complaint as set forth above.

2.      Uplift is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Dallas, Texas.

3.      Treetop is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located in Dallas, Texas.

4.      Lionfield is a private limited company organized and existing under the laws of England and Wales, with its principal place of business located in Guildford, Surrey, United Kingdom.

5.      On information and belief and as set forth in the Complaint, Counterclaim Defendant Impulse is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in East Greenwich, Rhode Island.

6.      The Court has subject matter jurisdiction over this Counterclaim pursuant to 15 U.S.C. §§ 1119 and 1121. Impulse has, by commencing this action in this Court, consented to personal jurisdiction and venue in this Court.

7.      On information and belief, Plaintiff and Counterclaim Defendant has never filed for federal or state trademark protection of Adopt Me in relation to any good and/or service.

8.      On information and belief and as set forth in the Complaint, Plaintiff and Counterclaim Defendant used the name Adopt Me in connection with plush toys and other offline, physical toys and items primarily or exclusively during the "mid-2000s."

9.      Over a decade prior to Defendants and Counterclaim Plaintiffs commencing use of Adopt Me! in 2017, Impulse ceased making bona fide use of the Adopt Me name in connection with plush toys and other offline, physical toys, and items.

10.     On information and belief, Impulse has not resumed use of the name Adopt Me for plush toys or other related offline toys and physical items to this day.

11.     Accordingly, pursuant to Lanham Act § 45, 15 U.S.C.A. § 1127, Impulse abandoned all common law rights it purports to own in the trademark Adopt Me for plush toys and other offline physical toys and items by discontinuing its purported use of the names on these goods in the "mid-2000s."

12.     Upon information and belief and as alleged in the Complaint, Impulse began using the term Adopt Me in connection with online games and related services on or about the year 2000.

13.     Upon information and belief, Impulse failed to use the term Adopt Me in a manner sufficient to establish or maintain common law rights. As noted in a June 7, 2011 interview with DomainSherpa, Eric Borgos, owner of Impulse, stated "[t]he reason I love adoptme.com is there

is no customer service. I don't answer – there is no email address even. I have a link to my corporate site at the bottom but there is no real – I don't answer questions**, I don't do anything.**" (Emphasis added.) *See* Exhibit 7, showing page 18 of the transcript of the interview at https://domainsherpa.com/eric-borgos-impulsecorp-interview/.

14.    Upon information and belief, the lack of consumer recognition of Plaintiff's Adopt Me from the early 2010s to 2020 demonstrates that Plaintiff did not establish or maintain common law trademark rights in and to the term Adopt Me for online games and related services.

15.    In 2017, Defendants and Counterclaim Plaintiffs' Adopt Me! game was launched in nationwide, interstate commerce in the Roblox environment under the mark Adopt Me!

16.    At the time of Defendants' and Counterclaim Plaintiff's launch in 2017, Impulse had use insufficient to establish or maintain common law trademark rights.

17.    As a result, Defendants and Counterclaim Plaintiffs became the senior user of Adopt Me! in 2017.

18.    Prior to any contact between the parties, Plaintiff and Counterclaim Defendant posted a public notice on its website adoptme.com on or before May 6, 2020, stating in relevant part, "[A]fter almost 20 years online, AdoptMe.com is shutting down. Please go to our new site instead at **BoredHumans.com** which has more than **40 fun and silly artificial intelligence (AI) pages** you can use for free online." (*Emphasis in original.*) *See* Exhibit 1.

19.    In a Reddit post about forgotten websites and adoptme.com, a user purporting to be the creator/owner of Adopme.com stated that "[t]he reason it died a slow death and eventually shut down was because it was programmed in Flash, which is a dead program, so the site stopped working in 2020" and not because of actions by Defendants and Counterclaim Plaintiffs. *See* Exhibit                                                                                              8,

https://www.reddit.com/r/forgottenwebsites/comments/pdyclv/this_is_a_video_about_adoptme com_one_of_the/

20.     Similar to any common law rights to Adopt Me for use in connection with plush toys that Impulse may have once held, Impulse abandoned all common law rights it purports to own in and to the term Adopt Me for online games and related services by discontinuing the offering of such games and products at adoptme.com.

21.      Impulse's intent to permanently discontinue any such offering was affirmed through its own public statement that it was "shutting down" and directing traffic to boredhumans.com, as shown at Exhibit 1.

22.     On information and belief and as set forth in the Complaint, Plaintiff and Counterclaim Defendant abandoned use of the term Adopt Me in connection with all goods and services prior to Defendants' and Counterclaim Plaintiffs' initial application for federal trademark protection of Adopt Me!

23.     After Impulse affirmed its intent to permanently "shut down" adoptme.com, Defendants and Counterclaim Plaintiffs filed for United Kingdom trademark protection for Adopt Me! on September 16, 2020 and United States trademark protection for Adopt Me! on February 4, 2021 for use in connection with numerous goods and services, including, but not limited to, "Downloadable Games software, . . . " in class 09 and "entertainment services, namely, providing on-line interactive computer games, . . . " in class 41.

24.     On information and belief, any purported investment by Impulse in a new product also called Adopt Me came many years after Defendants and Counterclaim Plaintiffs established themselves as the senior user of Adopt Me!

43

25.     By its own admission, Impulse was well aware of Defendants' and Counterclaim Plaintiffs' use of the trademark Adopt Me! since 2020. On information and belief, Impulse was aware of Defendants' and Counterclaim Plaintiffs' use of Adopt Me! before 2020.

26.     Upon information and belief, Impulse was aware of Defendants' and Counterclaim Plaintiffs' application for United States trademark registration of Adopt Me! in 2021.

27.     Impulse took no action to oppose or otherwise contest Defendants' and Counterclaim Plaintiffs' use of or application for Adopt Me! through the USPTO public opposition period, through contact with Defendants and Counterclaim Plaintiffs, or otherwise.

28.     Impulse's failure to oppose and/or contest Defendants' and Counterclaim Plaintiffs' use of and trademark application for Adopt Me! since 2017 and during the USPTO's public opposition period is consistent with its abandonment of any common law rights it may have once held.

29.     Even if Impulse was not aware of the filing of Defendants' and Counterclaim Plaintiffs' application to register Adopt Me!, to the extent Impulse retained any rights it may have held in Adopt Me, it had an obligation to police such rights and oppose any third-party use it deemed confusingly similar.

30.     On information and belief, Impulse has not policed or contested third-party use of terms similar to Adopt Me for online games or services consistent with its abandonment of any rights it may have once held to Adopt Me.

31.     On information and belief, after making its public statement of abandonment and learning of Defendants' and Counterclaim Plaintiffs' use of Adopt Me!, Plaintiff and Counterclaim Defendant Impulse began making sporadic and token use of Adopt Me in an effort

to claw back the rights it had abandoned and establish a pretext to support Plaintiff's claims in the current dispute including, but not limited to, use in commerce.

32.    On information and belief, Counterclaim Defendant Impulse never created an Android app and its iOS app has suffered from years of operability issues and complaints.

33.    All such efforts to revive use occurred after Defendants and Counterclaim Plaintiffs established themselves as the senior user of Adopt Me, and most, if not all, occurred after Defendants' and Counterclaim Plaintiffs' United States trademark priority date.

34.    For years, and despite previous communications between the parties, Impulse took no action or otherwise attempted to make contact with Defendants and Counterclaim Plaintiffs until the initiation of this action.

35.    Since Counterclaim Defendant Impulse lacked use sufficient to establish and/or maintain common law trademark rights to Adopt Me prior to Defendants' and Counterclaim Plaintiffs' acquisition of rights to Adopt Me! for online games in 2017, completely discontinued use of the term Adopt Me for plush toys and other offline, physical toys, and products in the "mid 2000s," made clear its intent to permanently "shut down" adoptme.com prior to Defendants' and Counterclaim Plaintiffs' United States trademark application, failed to police or enforce any purported rights, and engaged in use after Defendants' and Counterclaim Plaintiffs' priority date in order to establish a pretext for the current action, Defendants and Counterclaim Plaintiffs are entitled to a declaratory judgment that Impulse abandoned any common law or other rights it purports to hold in and to the name Adopt Me for use with plush toys and online games, as well as and all other goods and services it purports Defendants and Counterclaim Plaintiffs infringe.

## SECOND COUNTERCLAIM

## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114(1)

36.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 280 of the Complaint and the allegations in paragraphs 1 through 35 of their Counterclaims as set forth above.

37.    Uplift is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Dallas, Texas.

38.    Treetop is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located in Dallas, Texas.

39.    Lionfield is a private limited company organized and existing under the laws of the England and Wales, with its principal place of business located in Guildford, Surrey, United Kingdom.

40.    On information and belief and as set forth in the Complaint, Counterclaim Defendant Impulse is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in East Greenwich, Rhode Island.

41.    The Court has subject matter jurisdiction over this Counterclaim pursuant to 15 U.S.C. §§ 1119 and 1121. Impulse has, by commencing this action in this Court, consented to personal jurisdiction and venue in this Court.

42.    The Roblox game Adopt Me! was developed and introduced into interstate commerce in the United States in 2017.

43.    At the time Defendants' and Counterclaim Plaintiffs' Adopt Me! game was developed, Impulse had abandoned any rights it had in the Adopt Me trademark for use with plush toys and other offline physical toys and products.

46

44.    At the time Defendants' and Counterclaim Plaintiffs' Adopt Me! game was developed, Impulse did not have use sufficient to establish and/or maintain common law trademark rights in and to Adopt Me for online games and related services.

45.    Impulse made clear its intent to abandon any rights it may have once held to Adopt Me prior to Defendants' and Counterclaim Plaintiffs' application for federal trademark protection of Adopt Me! for online games and services through a clear public statement on adoptme.com.

46.    Impulse took insufficient steps to remedy its abandonment or otherwise enforce any alleged rights it may have had in the Adopt Me trademark against Defendants and Counterclaim Plaintiffs before Defendants' and Counterclaim Plaintiffs' trademark application.

47.    Since Impulse had abandoned its rights in the Adopt Me trademark prior to Defendants and Counterclaim Plaintiffs commencing use of Adopt Me!, Defendants and Counterclaim Plaintiffs are the senior users of the trademark Adopt Me!.

48.    Treetop and Lionfield jointly own U.S. Trademark Reg. No. 6,626,699 for Adopt Me! for "Downloadable Games software; downloadable interactive entertainment software for playing computer games; Downloadable computer software for use on handheld mobile digital electronic devices and other consumer devices for playing interactive computer games; downloadable software in the nature of a mobile application for playing games; downloadable electronic game software; downloadable computer game programs; downloadable electronic publications in the nature of blog posts, stories, journals, comic books, magazines, graphic novels and articles in the field of games and gaming" in class 09 and "Online gaming services in the nature of providing online computer games and computer game tournaments; entertainment services, namely, providing on-line interactive computer games; providing online computer games; providing online games and in wireless form provided through mobile devices; electronic

game services provided by means of the internet; organization of online computer game competitions; organization of electronic game competitions; entertainment services, namely, providing podcasts in the field of gaming; video entertainment services, namely, providing nondownloadable video and sound recordings in the field of video games and multimedia entertainment featuring scenes and characters based on video games; Entertainment services in the nature of development, creation, production, distribution, and postproduction of films, television shows, and multimedia entertainment content; development, and production of entertainment Television shows and interactive Television programs" in class 41; and U.S. Trademark Reg. No. 7,130,097 for "Cardboard; Pencils; Pens; Sketchbooks; Stickers; Typewriters; Adhesives for stationery and household use; Art prints; Art prints on canvas; Blank paper notebooks; Bookbinding materials for creating hardcover books, namely, book covers, crack-and-peel binding paper, reinforcement strips, peel-and-stick labels, stapler and staples; Color prints in the nature of printed photographs; Desk mats; Packaging materials of cardboard; Packaging materials of paper; Paint brushes; Pencil boxes; Pencil cases; Printed books in the field of video games; Printers' type; Printing blocks; Stationery; Sticker books; Blank journal books; Blank note cards; Paper notebooks; Pen and pencil cases and boxes; Photo albums; Plastic shopping bags; Printed diaries; Printed instructional and teaching materials in the field of entertainment; Printed notebooks; Printed photographs; Printed post cards; Printed posters; Printed materials, namely, novels and series of fiction books and short stories featuring scenes and characters based on video games" in class 16, "Backpacks; Briefcases; Handbags; Haversacks; Parasols; Purses; Rucksacks; Saddlery; Umbrellas; Whips; Animal skins and hides; Attaché cases; Beach bags; Chain mesh purses; Collars for animals; Covers for animals; Frames for umbrellas or parasols; Handbag frames; Leather and imitations of leather; Music cases; Net

bags for shopping; Pocket wallets; School bags; School satchels; Sling bags for carrying infants; Suitcase handles; Traveling bags; Trunks being luggage and suitcases; Umbrella covers; Umbrella handles; Umbrella or parasol ribs; Umbrella rings; Umbrella sticks; Vanity cases, not fitted; Walking sticks; Wheeled shopping bags; Business card cases; Hunters' game bags; Reins; Textile shopping bags" in class 18, "Combs; Mugs; Pots; Tankards; Appliances for removing make-up, non-electric; Containers for household use; Cookware, namely, pots; Cups and mugs; Earthenware mugs; Household utensils, namely, brushes and sponges; Kitchen containers; Menu card holders; Porcelain mugs; Pot holders; Sponges for household purposes; Tea cozies; Beverage glassware; Cleaning brushes for household use; Drinking glasses" in class 21, "Boots; Footwear; Hats; Pants; Shirts; Shoes; Shorts; Sweatshirts; Boot uppers; Cap peaks; Dress shields; Footwear uppers; Hat frames; Maternity clothing, namely, shirts, sweatshirts, pants, shorts; Pockets for clothing; Shirt fronts; Shirt yokes; Women's shoes; Bottoms as clothing for babies and children; Tops as clothing for babies and children" in class 25, "Barrettes; Bodkins; Brassards; Buttons; Needles; Toupees; Wigs; Zippers; Artificial flowers; Belt clasps; Boxes for needles; Brooches for clothing; Collar stays; Corset busks; Darning lasts; False hair; Feathers for ornamentation; Haberdashery ribbons and braid; Hair bands; Hair curlers, other than hand implements; Hair curling pins; Hair pins; Heat adhesive patches for repairing textile articles; Hooks and eyes; Lace and embroidery, haberdashery ribbons and braid; Laces and embroidery; Novelty buttons; Sewing thimbles; Shoe buckles; Shoe fasteners; Shoe laces; Slide fasteners; Spangles for clothing; Zip fasteners; Clothing buckles; Hair slides; Hook and loop fasteners for use in the manufacture of clothing and shoes; Ornamental adhesive patches for jackets; Ornamental novelty buttons; Ornamental novelty badges; Sewing pins" in class 26, and "Playhouses; Action figure toys; Artificial fishing bait; Bags specially designed to hold cricket equipment; Billiard cue tips;

Billiard markers; Billiard table cushions; Bladders of balls for games; Board games; Card games; Chalk for billiard cues; Children's dress up accessories, namely, toy helmets for play; Christmas tree decorations; Christmas trees of synthetic material; Edges of skis; Electronic action toys; Finger puppets; Golf bags with or without wheels; Infant development toys; Modeled plastic toy figurines; Music box toys; Novelty toy items in the nature of figurines based on video game characters; Novelty toys for playing jokes; Party games; Playground equipment, namely, climbing units; Plush dolls; Rollers for stationary exercise bicycles; Ski bindings; Soft sculpture plush toys; Stuffed and plush toys; Table-top games; Toy action figures; Artificial Christmas trees; Athletic protective pads for parts of sports suits; Tinsel for decorating Christmas trees" in class 28 .

49.    Defendants and Counterclaim Plaintiffs have used the Adopt Me! trademark in nationwide, interstate commerce continuously since at least as early as 2017.

50.    Defendants and Counterclaim Plaintiffs have made significant investments in the Adopt Me! game since its inception and have acquired significant recognition as the source of origin for goods and services branded with Adopt Me! through their continuous use thereof. *See* Exhibit 9.

51.    Upon learning of Defendants and Counterclaim Plaintiffs' successful and senior use of Adopt Me!, Impulse made sporadic and token use of the Adopt Me trademark in a manner likely to cause confusion or mistake as to the affiliation of Impulse with Defendants and Counterclaim Plaintiffs, including, but not limited to, Impulse's ownership and use of the website adoptme.com.

52.    On information and belief, Counterclaim Defendant Impulse did not have banner ads on adoptme.com from mid-2020 until immediately preceding the filing of the Complaint.

53. On information and belief, Counterclaim Defendant Impulse's app on the Apple App Store is downloadable but is inoperable as new users are unable to "login" or "register" and cannot proceed beyond the home page.

54. On information and belief, Counterclaim Defendant Impulse's app is not available on Android or on the Google Play App Store.

55. Impulse infringes Defendants and Counterclaim Plaintiffs' rights under 15 U.S.C. § 1114(1).

56. Impulse's infringing activities have caused and, unless enjoined by the Court, will continue to cause, irreparable injury and other damages to Defendants and Counterclaim Plaintiffs, and Defendants and Counterclaim Plaintiffs have no adequate remedy at law.

57. Impulse's infringing activities merit an award of monetary damages, including actual, consequential, and punitive damages, injunctive relief, and an order assigning ownership of the infringing domain name adoptme.com from Impulse to Defendants and Counterclaim Plaintiffs.

58. On information and belief, Impulse's actions in this matter qualify as an exceptional case entitling Defendants and Counterclaim Plaintiffs to an award of reasonable attorneys' fees under 15 U.S.C. § 1117(a). This Court should award Defendants and Counterclaim Plaintiffs reasonable attorneys' fees after considering the totality of circumstances surrounding Impulse's actions in this matter, including, but not limited to, Impulse's claim for trademark infringement for plush toys that Impulse acknowledges it ceased offering for sale in the "mid-2000s," Impulse's breadth of claims included in its original Complaint for which no basis was alleged or offered and were subsequently withdrawn when challenged by Defendants and Counterclaim Plaintiffs, and Impulse's intentional conflation of abhorrent allegations made

against third party Roblox as somehow attributable to Defendants and Counterclaim Plaintiffs, which this Court has stricken.

## **THIRD COUNTERCLAIM**

### **TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1125(a)**

59.    Defendants reassert and incorporate by reference their responses to paragraphs 1 through 280 of the Complaint and the allegations in paragraphs 1 through 58 of their Counterclaims as set forth above.

60.    Uplift is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Dallas, Texas.

61.    Treetop is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located in Dallas, Texas.

62.    Lionfield is a private limited company organized and existing under the laws of England and Wales, with its principal place of business located in Guildford, Surrey, United Kingdom.

63.    On information and belief and as set forth in the Complaint, Counterclaim Defendant Impulse is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in East Greenwich, Rhode Island.

64.    The Court has subject matter jurisdiction over this Counterclaim pursuant to 15 U.S.C. §§ 1119 and 1121. Impulse has, by commencing this action in this Court, consented to personal jurisdiction and venue in this Court.

65.    The Roblox game Adopt Me! was developed and introduced into interstate commerce in the United States 2017.

66.    At the time Defendants' and Counterclaim Plaintiffs' Adopt Me! game was developed, Impulse had abandoned any rights it had in the Adopt Me trademark for use with plush toys and other offline physical toys and products.

67.    At the time Defendants' and Counterclaim Plaintiffs' Adopt Me! game was developed, Impulse did not have sufficient use to establish or maintain common law trademark rights in and to Adopt Me for online games and related services.

68.    Impulse made clear its intent to abandon any rights it may have once held to Adopt Me prior to Defendants' and Counterclaim Plaintiffs' application for federal trademark protection of Adopt Me! for online games and services through a clear public statement on adoptme.com.

69.    Impulse took insufficient steps to remedy its abandonment or otherwise enforce any alleged rights it may have had in the Adopt Me trademark against Defendants and Counterclaim Plaintiffs before Defendants' and Counterclaim Plaintiffs' trademark application.

70.    Since Impulse had abandoned its rights in the Adopt Me trademark prior to Defendants and Counterclaim Plaintiffs commencing use of the trademarks Adopt Me!, Defendants and Counterclaim Plaintiffs are the senior users of the trademarks Adopt Me and Adopt Me!.

71.    Defendants and Counterclaim Plaintiffs have used the Adopt Me! trademark in nationwide, interstate commerce continuously since at least as early as 2017.

72.    Defendants and Counterclaim Plaintiffs have made significant investments in the Adopt Me! game since its inception and have acquired significant recognition as the source of origin for goods and services branded with Adopt Me! through their continuous use thereof. *See* Exhibit 9.

73.     Upon learning of Defendants and Counterclaim Plaintiffs successful and senior use of Adopt Me!, Impulse made sporadic and token use of the Adopt Me trademark in a manner likely to cause confusion or mistake as to the affiliation of Impulse with Defendants and Counterclaim Plaintiffs, including, but not limited to, Impulse's ownership and use of the website adoptme.com.

74.     On information and belief, Counterclaim Defendant Impulse did not have banner ads on adoptme.com from mid-2020 until immediately preceding the filing of the Complaint.

75.     On information and belief, Counterclaim Defendant Impulse's app on the Apple App Store is downloadable but is inoperable as new users are unable to "login" or "register" and cannot proceed beyond the home page.

76.     On information and belief, Counterclaim Defendant Impulse's app is not available on Android or on the Google Play App Store.

77.     Impulse infringes Defendants' and Counterclaim Plaintiffs' rights under 15 U.S.C. § 1125(a).

78.     Impulse's infringing activities have caused and, unless enjoined by the Court, will continue to cause, irreparable injury and other damages to Defendants and Counterclaim Plaintiffs, and Defendants and Counterclaim Plaintiffs have no adequate remedy at law.

79.     Impulse's infringing activities merit an award of monetary damages, including actual, consequential, and punitive damages, injunctive relief, and an order assigning ownership of the infringing domain name adoptme.com from Impulse to Defendants and Counterclaim Plaintiffs.

80.     On information and belief, Impulse's actions in this matter qualify as an exceptional case entitling Defendants and Counterclaim Plaintiffs to an award of reasonable

attorneys' fees under 15 U.S.C. § 1117(a). This Court should award Defendants and Counterclaim Plaintiffs reasonable attorneys' fees after considering the totality of circumstances surrounding Impulse's actions in this matter, including, but not limited to, Impulses claim for trademark infringement for plush toys that Impulse acknowledges it ceased offering for sale in the "mid-2000s," Impulse's breadth of claims included in its original Complaint for which no adequate basis was alleged or offered that were subsequently withdrawn when challenged by Defendants and Counterclaim Plaintiffs, and Impulse's intentional conflation of abhorrent allegations made against third party Roblox as somehow attributable to Defendants and Counterclaim Plaintiffs, which this Court has stricken.

## **DEMAND FOR JURY TRIAL**

Defendants and Counterclaim Plaintiffs hereby respectfully demand a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants and Counterclaim Plaintiffs respectfully request that the Court enter a judgment:

(a)    declaring any rights Counterclaim Defendant Impulse may have once had in the ADOPT ME trademark are abandoned;

(b)    declaring that Counterclaim Defendant Impulse infringes Defendants'/Counterclaim Plaintiffs' U.S. Trademark Reg. No. 6626699, Reg. No. 7130097, and/or its common law rights in the ADOPT ME! trademark;

(c)    awarding Defendants and Counterclaim Plaintiffs monetary damages, including actual, consequential, and punitive damages;

(d)    granting injunctive relief to Defendants and Counterclaim Plaintiffs and prohibiting Plaintiff/Counterclaim Defendant Impulse, its employees, agents, officers, directors, successors, affiliates, subsidiaries, and assigns from using (directly or indirectly) the Adopt Me trademark and any confusingly similar trademarks;

(e)    declaring that Impulse's actions in this matter qualify as "exceptional" when examining the totality of circumstances;

(f)    awarding Defendants and Counterclaim Plaintiffs their costs of suit herein;

(g)    awarding Defendants and Counterclaim Plaintiffs such attorneys' fees as may be allowed by applicable law;

(h)    ordering the transfer of ownership of Impulse's infringing domain name adoptme.com to Defendants and Counterclaim Plaintiffs; and

(i)    awarding Defendants and Counterclaim Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ Jeffrey K. Techentin
By:
R. Bart Totten
Jeffrey K. Techentin
ADLER POLLOCK AND SHEEHAN, P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903

Michael D. Adams
(*pro hac vice*)
Emily A. Nash
(*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606

*Counsel for Defendants Uplift Games LLC, Treetop
Games LLC, and Lionfield Investments Ltd.*

Dated: February 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of the Court on February 5, 2025 and that it is available for viewing and downloading from the Court's CM/ECF system. All counsel of record have been served by electronic means.

/s/ Jeffrey K. Techentin

**Exhibit 1**

https://web.archive.org/web/20200506021652/http://www.adoptme.com/
Screenshot captured January 29, 2025



We are very sorry, but after almost 20 years online, AdoptMe.com is shutting down. Please go to our new site instead at **BoredHumans.com** which has more than **40 fun and silly artificial intelligence (AI) pages** you can use for free online. There are several reasons we could no longer keep AdoptMe.com running, but the main one was the programming was so old that it stopped working recently when we updated the server. Another problem was that the site was programmed in Flash, which was popular in the early 2000s but can't easily be used on mobile devices. And, more recently, we have started receiving angry emails from users of an "AdoptMe" game in Roblox, which is in no way related to our site/company. Numerous people are getting scammed (and maybe hacked?) there and think we are responsible because they mistakenly think we own that game. The sheer volume of these complaints puts us at risk of getting sued or other legal troubles, where we would have to hire a lawyer just to prove we had nothing to do with it.

**Exhibit 2**









https://x.com/AdoptmeFriends
Screenshot captured February 3, 2025



**Exhibit 3**

https://www.entertainmentearth.com/product/adopt-me-beagle/ad116
Screenshot captured January 29, 2025



## Specifications

| | |
|---|---|
| Company: | Adopt Me Toys |
| Theme: | Pets |
| Product Type: | Plush |
| Weight: | 1 lb |



| See All Plush |
|---|

Entertainment Earth sells toys, action figures and collectibles intended for purchase by adult collectors. Products may contain small parts, choking hazards, sharp points, and other elements not suitable for children under 16 years old.

 **WARNING:** Certain products sold here may expose you to chemicals known to the State of California to cause cancer, birth defects, or other reproductive harm. For more information, go to www.P65Warnings.ca.gov.

"I love shopping at Entertainment Earth during the holidays! Best deals on toys! The lower rate on free shipping is marvelous. Thank you guys!"

Read More Testimonials

### Got a Question?

Help Center - FAQ
Email Us
Live Chat
Monday-Thursday
7:00 a.m. to 5:00 p.m. Pacific Time
Friday
7:00 a.m. to 12:00 p.m. Pacific Time

### Browse and Explore

Drop Zone
Shops
Newly Added
Hot Off The Truck
Blog
Deals & Sales

### Your Account

Track Your Order
Returns
Alerts and Subscriptions
Wish Lists
Addresses
Payments
Shipping

### Volume Pricing

EE Distribution - Wholesale

### Behind the Scenes

About Entertainment Earth
How to Buy from Us -
Wholesale
How to Sell to Us
Press Center
Careers

### Get Exclusive News, Offers and Insider Deals!

Email

Join

Sign-Up for Text Messages

 Receive a perfect item with the best packaging possible - at no extra charge. Experience our groundbreaking Mint Condition Guarantee™.

 If you find a lower price on this item elsewhere, just contact us. We'll give you 110% of the difference with our Low Price Guarantee.

 Shop with us and enjoy Hassle Free 90-Day Returns.

 Shop Risk Free with us. We will not charge your credit card until items come in stock.

    

Product specifications, prices, ship dates, and availability are subject to change without notice.
Copyright 1996-2025 Entertainment Earth. All Rights Reserved.
61 Moreland Rd., Simi Valley, CA 93065 U.S.A.
Privacy | Accessibility Statement | Terms of Use

 

https://www.entertainmentearth.com/product/adopt-me-horse/ad178
Screenshot captured January 29, 2025



## Specifications

Company:        Adopt Me Toys
Theme:          Pets
Product Type:   Plush
Weight:         1 lb



```
See All Plush
```

Entertainment Earth sells toys, action figures and collectibles intended for purchase by adult collectors. Products may contain small parts, choking hazards, sharp points, and other elements not suitable for children under 16 years old.

 **WARNING:** Certain products sold here may expose you to chemicals known to the State of California to cause cancer, birth defects, or other reproductive harm. For more information, go to www.P65Warnings.ca.gov.

## Recently Viewed Items



**Adopt Me Beagle**

"I've been a collector for close to 2 decades but as soon as I used Entertainment Earth for the first time I started ordering 90% of my collectibles from them. I've literally ordered 400+ items from them so far. I've had very few issues, but the few..."

Read More Testimonials

## Got a Question?

Help Center - FAQ
Email Us
Live Chat
Monday-Thursday
7:00 a.m. to 5:00 p.m. Pacific
Time
Friday
7:00 a.m. to 12:00 p.m.
Pacific Time

## Browse and Explore

Drop Zone
Shops
Newly Added
Hot Off The Truck
Blog
Deals & Sales

## Your Account

Track Your Order
Returns
Alerts and Subscriptions
Wish Lists
Addresses
Payments
Shipping

## Volume Pricing

EE Distribution - Wholesale

## Behind the Scenes

About Entertainment Earth
How to Buy from Us -
Wholesale
How to Sell to Us
Press Center
Careers

## Get Exclusive News, Offers and Insider Deals!

Email

Join

Sign-Up for Text
Messages

 Receive a perfect item with the best packaging possible - at no extra charge. Experience our groundbreaking Mint Condition Guarantee™.

 If you find a lower price on this item elsewhere, just contact us. We'll give you 110% of the difference with our Low Price Guarantee.

 Shop with us and enjoy Hassle Free 90-Day Returns.

 Shop Risk Free with us. We will not charge your credit card until items come in stock.

    

Product specifications, prices, ship dates, and availability are subject to change without notice.
Copyright 1996-2025 Entertainment Earth. All Rights Reserved.
61 Moreland Rd., Simi Valley, CA 93065 U.S.A.
Privacy | Accessibility Statement | Terms of Use



https://www.entertainmentearth.com/product/adopt-me-hamster
Screenshot captured January 29, 2025







## Got a Question?

Help Center - FAQ
Email Us
Live Chat
Monday-Thursday
7:00 a.m. to 5:00 p.m. Pacific Time
Friday
7:00 a.m. to 12:00 p.m. Pacific Time

## Browse and Explore

Drop Zone
Shops
Newly Added
Hot Off The Truck
Blog
Deals & Sales

## Your Account

Track Your Order
Returns
Alerts and Subscriptions
Wish Lists
Addresses
Payments
Shipping

## Volume Pricing

EE Distribution - Wholesale

## Behind the Scenes

About Entertainment Earth
How to Buy from Us -
Wholesale
How to Sell to Us
Press Center
Careers

## Get Exclusive News, Offers and Insider Deals!

Email

Join

Sign-Up for Text Messages

 Receive a perfect item with the best packaging possible - at no extra charge. Experience our groundbreaking Mint Condition Guarantee™.

 If you find a lower price on this item elsewhere, just contact us. We'll give you 110% of the difference with our Low Price Guarantee.

 Shop with us and enjoy Hassle Free 90-Day Returns.

 Shop Risk Free with us. We will not charge your credit card until items come in stock.

    

Product specifications, prices, ship dates, and availability are subject to change without notice.
Copyright 1996-2025 Entertainment Earth. All Rights Reserved.
61 Moreland Rd., Simi Valley, CA 93065 U.S.A.
Privacy | Accessibility Statement | Terms of Use



**Exhibit 4**

https://www.youtube.com/watch?v=hzxdZLOCVFU
Screenshot captured February 3, 2025

0:35 minute mark:



4:08 minute mark:





**A horrific game from my childhood**

kennyphosphene
188 subscribers

Subscribe

👍 20      👎      Share      ...

296 views  5 years ago
bro this game suck

Play the game at adoptme.com ...more

4:20 minute mark:



5:51 minute mark:



## Exhibit 5

1/31/25, 6:27 PM                                           AdoptMe Virtual Pets Metaverse : r/metaverse

Skip to main content        🔵 **r/metaverse** ⊗    Search in r/metaverse                    **Log In**    ⋯

🔵 **r/metaverse** · 3 yr. ago                                                              🗑  ⋯
impulsecorp

### AdoptMe Virtual Pets Metaverse

`Question`

I run a 20-year-old virtual pets site at AdoptMe.com, I am in the process of converting it to a metaverse, as you can
see by the intro video on the main page. So far I have virtual land in 3D that users can claim, but rest of the site
(such as the pets) is still in the old 2D format. I would be interested to hear what people think I should do to next
to make the site better.

My plan is to make it more like Minecraft and Roblox, where you can build on your land. I am also going to have it
so you can create their own 3D role playing game (probably involving food fighting with your pet, since I need to
keep the site as non-violent as possible due to young kids playing it).

I eventually will convert much of what I already have to be part of the metaverse. For example, right now you can
chat with your pet using a simple text box, but I will soon change it so you chat instead with your pet inside the
AdoptMe metaverse.



☐  Archived post. New comments cannot be posted and votes cannot be cast.

⬆ **0** ⬇      💬 **14**      Ⓠ      ↪ Share

Sort by:  Top (Default) ⌄      🔍 Search Comments

**apexisalonelyplace** · 3y ago · Edited 3y ago

A suggestion is to have NFTs attached somehow where people can buy said NFTs and each purchase (lots of
money hopefully) would be helping sponsor and sort of adopt a real life dog at a shelter. Once a real world
tangible benefit is attached to this sort of project it could take it to the next level. Think toms shoes. People
love a good story and investors love to invest in a good story. I have thought about this exact thing for a
while and I have more thorough ideas on value proposition, user interfaces, metaverse interaction with the
real life animals and much more. An example: someone buys your NFT that is attached to "max" the dog at a
local shelter. The proceeds of the NFT go towards providing extra care for the shelter and the real world
"max". Then, we can coordinate for the shelter to set up some sort of livestream/recording of "max" the dog
so that a metaverse user from any where in the world could also have a chance to interact with the real world
animal that is being sponsored.

I think this can be developed into a full fledged business too. Maybe enough money can be raised (especially
through investors) so that these shelters become much nicer and raise the living conditions for animals all
over the world. Holla atcha boi. I have ideas.

https://www.reddit.com/r/metaverse/comments/scvqp3/adoptme_virtual_pets_metaverse/                              1/5

**Exhibit 6**

June 2017 –

https://www.semrush.com/analytics/keywordoverview/?q=adopt+me&db=us&date=201706

Screenshot captured 05/02/2025



July 2017 -
https://www.semrush.com/analytics/keywordoverview/?q=adopt+me&db=us&date=201707
Screenshot captured 05/02/2025



| | URL | Page AS | Ref. Domains | Backlinks | Search Traffic | URL Keywords |
|---|---|---|---|---|---|---|
| 1 | https://www.adoptmeforever.org/ adoptmeforever.org | 10 | 3 | 3 | 4.3K | 974 |
| 2 | https://www.adoptmeforever.org/adopt/ adoptmeforever.org | 10 | 1 | 1 | 93 | 4 |
| 3 | http://www.adoptmerescue.org/ adoptmerescue.org | 62 | 24 | 156 | 244 | 154 |
| 4 | http://www.adoptapet.com/adoption_rescue/83453.html adoptapet.com | 0 | 0 | 0 | 143 | 27 |
| 5 | http://adoptmeforever.petfinder.com/ petfinder.com | 0 | 0 | 0 | 119 | 11 |
| 6 | https://www.facebook.com/adoptmeanimalrescuewi/ facebook.com  Reviews | 0 | 0 | 0 | 62 | 8 |
| 7 | https://www.facebook.com/AdoptMeRescue/ facebook.com  Reviews | 27 | 1 | 1 | 59 | 5 |
| 8 | http://www.adoptme.com/ adoptme.com | 66 | 203 | 1.9K | 641 | 422 |
| 9 | http://www.rescueme.org/ rescueme.org | 72 | 311 | 1.4K | 39.0K | 1.7K |
| 10 | http://cuyahogadogs.com/en-us/Adopt-Me.aspx cuyahogadogs.com | 0 | 0 | 0 | 169 | 82 |

https://www.semrush.com/analytics/keywordoverview/?q=adopt+me&db=us&date=201707    1/2

78

**Exhibit 7**

## DomainSherpa.com: The Domain Name Authority

just having old websites that are popular tend to get like that. Right now I tend to make $1,600 a month from Ad Sense on the site. And at one point it was up to $5,000 a month back two or three years ago but I guess the Ad Sense rates have just gone down even though the traffic has stayed the same.

Also MTV had bought neopets.com which was a similar site but $160,000,000 four or five years ago. So I was hoping that at some point I might make it big and get bought but no one has ever tried to do that unfortunately.

The reason I love adoptme.com is there is no customer service. I don't answer – there is no email address even. I have a link to my corporate site at the bottom but there is no real – I don't answer questions, I don't do anything. I add new stuff to the site sometimes. But for like five years I did absolutely nothing. Those are the ideal types of sites that I like. Even with dumb.com I don't actually do anything on a daily basis. It is all stuff that just runs itself. I do have to deal with down programs and even with (Inaudible 35:11) going on with the servers. But on a daily basis those are the types of sites that I want.

Another example is a site I have – a couple years ago I set up ailments.com which I figured was a pretty good word. It is not a killer domain name or anything but it is just better than having a parking date I figured. So I paid some people in India to write articles for me. There were like 6,000 medical articles. Not really articles but each illness, like if you have tuberculosis how to deal with that. So it is kind of like a WebMD kind of article dock site. And that only makes like a dollar a day. So $30 a month. So you never know what is going to take off. You can have content and a great name, an old ten year old name and Google is all about unique content now with the (Inaudible 36:00). It hasn't had any effect on ailments.com or on any of my other sites really. I thought maybe it would get higher but I haven't found – I always like having new content but in essence I've found that makes a huge difference in terms of whether it has a lot of new content or a little bit of new content. I mean I have some sites that ranked number one that is like a one page site.

## Exhibit 8

1/31/25, 6:42 PM        This is a video about adoptme.com one of the strangest pet games I've ever played. Last time I logged on there were 0 other users,...



r/forgottenwebsites          Search in r/forgottenwebsites          Log In          ...

---

**r/forgottenwebsites** · 3 yr. ago
kennyphosphene                                                                        ...

**This is a video about adoptme.com one of the strangest pet games I've ever played. Last time I logged on there were 0 other users, I'd say that counts as pretty forgotten lol? Does anyone else remember this??**



⬆ 27 ⬇        💬 13        Ꙩ        ⤳ Share



officialsquarespace · Promoted                                                        ...

PSA, Redditors: You don't need a business to have a website. All you need is yourself. And with Squarespace, you can easily create a website that reflects your personal brand, individuality, and identity–all by using its intuitive design, AI, and expressibility tools.



Sign Up                                                    squarespace.com


+ Add a comment

1/31/25, 6:42 PM        This is a video about adoptme.com one of the strangest pet games I've ever played. Last time I logged on there were 0 other users,...

Skip to main content                                                                 Log In

---

**Recreational_Pissing** · 3y ago

I have vague memories of seeing this site in lists of virtual pet games, but that's all. Looks like my younger self made the right decision not to play it. It's crazy that anyone at all is still playing it. Do you think they're oldies or just people trying it out for kicks, like OP?

⬆ 1 ⬇    ○ Reply    ···

**MintleafCakes** · 3y ago

i've never heard of or played this myself, but just watching the video is making me intrigued. though flash player is gone, it seems that they have an app out on iphone (at least according to their news + updates). sucks that i don't have an iphone to see it for myself.

⬆ 1 ⬇    ○ Reply    ···

**impulsecorp** · 3y ago · Edited 3y ago

I was the creator/owner of Adoptme.com . It was built in 1999, so web games were a lot different back then. The reason it died a slow death and eventually shut down was because it was programmed in Flash, which is a dead program, so the site stopped working in 2020. iPhone/iPads couldn't use Flash, so that was a big problem, but now even PCs can't use Flash. I launched an app last year but that got hardly any downloads so I have no updated it since.

This week I launched a new version of the site which is all about adopting and taking care of virtual pets like the old version, but you also can mint (create) NFTs of your pets for free to blockchains such as Solana and Polygon with no minting fees.

⊖  ⬆ 1 ⬇    ○ Reply    ···

**mydogislife_** · 3y ago

I loved this shit as a kid. I found this video because at 29yo I was like "lemme check that shit out again." Sad to see it is no longer a thing.

⬆ 1 ⬇    ○ Reply    ···

**tugboatenthusiaste** · 2y ago

Yea wait are you fr cause I loved this site sm and would love to play it again

⬆ 1 ⬇    ○ Reply    ···

⊕  8 more replies

**Exhibit 9**



**RƆBLOX**     ≡

science-fiction, cast their votes for popular categories, and chased down limited-time virtual merch inside the space-age complex. But all that was just a prelude to the adventure about to unfold.



Once the day of the show came, excited Metaverse tourists poured into the venue to take a journey through popular Roblox experiences including World // Zero, RB Battles, and Adopt Me. The event drew **over 26 million visits**, and at one time **855,000 players** were simultaneously experiencing every action-packed second. In addition to the host JParty, the adventure featured Roblox luminaries Rovi23, TanqR, iamSanna, KreekCraft, and LeahAshe. Furthermore, music fans were blown away by an unbelievable set from British rock duo Royal Blood, taking the virtual stage in stylish avatars custom designed and animated for the performance.



This year's awards went to:

**Best Showcase** – Graanhaven, Rotterdam by Supersnel11

**Best Live Event** – RB Battles by RB Battles Games

**Best Game Trailer** – Tower Defense Simulator by Paradoxum Games

**Best New Game** – Brookhaven by Wolfpaq

**Most Immersive Experience** – World // Zero by RedMantaStudio

**Mobile Game of the Year** – Super Golf! by Nosniy Games

**Best Video Content Creator** – KreekCraft

**Best Sleeper Hit** – Super Doomspire by doomsquires

1/31/25, 5:59 PM                          8th Annual Bloxy Awards: Complete Winners List - Roblox Blog

# R⊡BLOX 

**Xbox Game of the Year** – Phantom Forces by StyLiS Studios

**Roblox Video of the Year** – FGTeeV – Psycho PIG Music Video

**Most Educational Game** – Lua Learning by boatbomber

**Creator of the Year** – MiniToon

**Game of the Year** – Piggy by MiniToon

**Builderman Award of Excellence** – Piggy by MiniToon

**Most Popular UGC Item** – Shadowed Head by maplestick

**Problem Solver** – colbert2677

**Best Incubator/Accelerator Game** – Tank Warfare by IndieBox Studios

**Most Installed Plugin** – Moon Animator by xSlXx

**Most Concurrent Players** – Adopt Me! by DreamCraft

**Most Visits** – Adopt Me! by DreamCraft

**Highest Total 2020 Playtime** – Adopt Me! by DreamCraft

**Best International Hit** – Prison Life by Aesthetical

**Most Joined Roblox Group** – The Flamingo Fan Club by mrflimflam

https://blog.haydz6.com/2021/03/8th-annual-bloxy-awards-complete-winners-list                                   4/5



Kids' Choice Awards Voting Is LIVE

VOTE NOW

Vote    Videos    Photos    Nick.com

# EVERY KIDS' CHOICE AWARDS 2023 WINNER

## Check out our full list of 2023 winners! Featuring Dove Cameron, SpongeBob, Jenna Ortega, Millie Bobbie Brown, & more.

March 6, 2023 / 4:00 PM



**Dove Cameron Wins Favorite Breakout Artist**
Check out our full list of 2023 winners!
Featuring Dove Cameron, SpongeBob,

6/10/24, 8:18 AM

Every Kids' Choice Awards 2023 Winner | News | kca

https://www.nick.com/kids-choice-awards/articles/nveak22/every-kids-choice-awards-2023-winner#:~:text=4%3A00 PM-,Check out our full list of 2023 winners!,Female TV Star (Family),.

13/14



Gino Chopra Jonas

Noon Coleman

Piggy Lou Bieber

Toulouse Grande

**Favorite Book**

**WINNER: Harry Potter Book Series**

Cat Kid Comic Club Book Series

Diary of a Wimpy Kid Book Series

Five Nights at Freddy's Book Series

The Adventures of Captain Underpants
Books Series

The Bad Guys Book Series

**Favorite Video Game**

**WINNER: Minecraft**

**Adopt Me!**

Brookhaven

Just Dance 2023

Mario + Rabbids Sparks of Hope

Pokémon Scarlet and Violet

**LATEST NEWS**