## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IMPULSE COMMUNICATIONS, INC., <br><br>    *Plaintiff*, <br><br> v. <br><br> Uplift Games LLC, Treetop Games LLC, and Lionfield Investments Ltd. <br><br>    **Defendants**. | Case No. 1:24-cv-00166-JJM-LDA |

## PLAINTIFF, IMPULSE COMMUNICATIONS, INC.'S, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AFFIRMATIVE DEFENSES IN DEFENDANTS' ANSWER AND MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF

NOW COMES Plaintiff, Impulse Communications, Inc. ("Plaintiff"), by and through its undersigned counsel, and respectfully moves this Honorable Court, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike all six of the affirmative defenses asserted by Defendants Uplift Games, LLC, Treetop Games LLC, and Lionfield Investments Ltd ("Defendants") in their Answer to Plaintiff's Complaint, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Defendants' First, Second and Third Counterclaims against Plaintiff.

## I.  INTRODUCTION

Defendants filed an Answer to Plaintiff's Complaint asserting six affirmative defenses: abandonment, laches, estoppel, acquiescence, statute of limitations, and unclean hands.  The Court should strike all six of Defendants' affirmative defenses under Fed. R. Civ. P. Rule 12(f) because they are insufficient given the lack of facts alleged by the Defendants.  Defendants'

1

defense of abandonment is insufficient because Defendants' vague and contradictory allegations present a legal and factual impossibility. Defendants' laches defense is insufficient because of the applicability of the doctrine of progressive encroachment. The Court should also strike Defendants' affirmative defenses of estoppel, acquiescence and unclean hands because Defendants have failed identifying any conduct by Plaintiff that would justify the application of these defenses. Finally, the Court should strike the defense of statute of limitations as inapplicable in the case of the claims brought by the Plaintiff.

Along with their Answer, Defendants asserted three counterclaims against Plaintiff: (1) Declaratory Judgment of Abandonment, (2) Trademark Infringement under 15 U.S.C. §1114(1), and (3) Trademark Infringement under 15 U.S.C. §1125(a).  The Court should dismiss Defendants' counterclaims pursuant to Fed. R. Civ. P. Rule 12(b)(6) because they are inadequately pleaded.  Defendants' declaratory judgment counterclaim is redundant of Defendants' affirmative defense of abandonment, serves no useful purpose, is undermined by Defendants' contradictory claims about whether and when plaintiff abandoned its rights, and is belied by the evidence submitted to the Court by the Defendants. Defendants' trademark infringement counterclaims fail to plausibly allege the necessary element that Plaintiff's use of the Adopt Me mark was likely to cause consumer confusion.

## II.  PROCEDURAL HISTORY

Plaintiff filed a ten-count Complaint against Defendants on April 26, 2024, asserting claims of trademark infringement under 15 U.S.C. §1125(a), dilution of trademark under 15 U.S.C. §1125(c), violation of the Anti-cybersquatting Consumer Protection Act, common law trademark infringement, common law unfair competition, violation of Rhode Island's Trademark Anti-Dilution statute (R.I.G.L. §6-2-12), tortious interference, and a petition to cancel

Defendants' registered trademarks of the term "Adopt Me!" (DKT 1) Defendants filed a motion to strike certain allegations in the Complaint and to dismiss Plaintiff's dilution of trademark, tortious interference, Anti-cybersquatting Consumer Protection Act, and common law unfair competition claims. Plaintiff voluntarily withdrew its dilution of trademark and tortious interference claims. In a Memorandum and Order dated December 23, 2024, the Court granted in part and denied in part Defendants' Motion to Strike and denied Defendants' Motion to Dismiss. Defendants filed their Answer and Counterclaims against Plaintiff on February 5, 2025. (DKT 32)

## III. MOTION TO STRIKE AFFIRMATIVE DEFENSES

### A. LEGAL STANDARD FOR STRIKING AFFIRMATIVE DEFENSES

Under Fed. R. Civ. P. 12(f), a party may move to strike an "insufficient defense" from a pleading. *R.I. Res. Recovery Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 10-294S, 2010 U.S. Dist. LEXIS 155587, at *2-3 (D.R.I. Oct. 8, 2010). Generally, courts are reluctant to grant such motions since they require an evaluation of a defense's merits before the necessary factual background is developed. *Inmusic Brands, Inc. v. Roland Corp.*, No. 17-00010, 2022 U.S. Dist. LEXIS 105756, at *4-5 (D.R.I. June 14, 2022) Courts grant a motion to strike where the insufficiency of the defense is clearly apparent. *Id*. A defense is clearly legally insufficient if it appears that the movant would succeed despite any state of facts which could be proved in support of the defense. *Planalto v. Ohio Cas. Ins. Co.*, No. 07-142, 2008 U.S. Dist. LEXIS 41036 at *9 (D.Me. May 19, 2008). Furthermore, when appropriate, winnowing out legally-insufficient defenses by granting a motion to strike may help clarify the issues in dispute and avoid prejudice to the plaintiff created by having to respond to meritless defenses. *United Sates v. Kennebec Scrap Iron, Inc.*, No. 1:16-cv-191, 2016 U.S. Dist. LEXIS 156004, at *4-5 (D. Me. Nov. 10, 2016).

## B. ARGUMENT FOR STRIKING AFFIRMATIVE DEFENSES

All of Defendants' affirmative defenses are clearly insufficient and meritless and should be stricken pursuant to Rule 12(f).

### 1. Affirmative Defense No. 1 (Abandonment)

*Defendants' Conflicting Defense and Claim of Infringement*

Plaintiff moves to strike Defendants' affirmative defense of abandonment because Defendants' vague and contradictory allegations present a legal and factual impossibility. In their pleadings, the Defendants assert that they believed that Plaintiff's rights to the Adopt Me mark were abandoned in May, 2020, when Plaintiff posted a notice to its AdoptMe.com website announcing a shutdown of their Flash version of the Adopt Me game. (Answer, ¶ 117, Counterclaims ¶¶ 21, 31) Yet, a 2020 abandonment would mean that Defendants were infringing on Plaintiff's rights between their first use of Adopt Me! in 2017 and 2020. So, they use cherry-picked evidence to create a second confusing and contradictory narrative in their Pleadings that Plaintiff had somehow already abandoned all of its rights to Adopt Me prior to 2017. Neither of these scenarios is well pleaded for purposes of an affirmative defense of abandonment.

To establish trademark abandonment, a party must prove discontinuance of the mark with an intent not to resume use of the mark. 15 U.S.C §1127.  To prevail in that endeavor, "[t]he party asserting abandonment bears the burden of persuasion with respect to two facts: (1) non-use of the mark by the legal owner, and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future." *To-Ricos, Ltd. v. Productos Avícolas del Sur, Inc.*, 118 F.4th 1, 10 (1st Cir. 2024).  A temporary break in commercial use does not amount to abandonment if the owner has intent to resume use. *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1392

(Fed. Cir. 2010) (temporary non-use, even for years, does not equate to abandonment when intent to resume use exists).

Rather than asserting a clear and specific basis for their defense, Defendants present conflicting narratives about (1) whether Plaintiff ever had enforceable trademark rights, (2) if and when Plaintiff allegedly abandoned those rights, and (3) how the alleged abandonment was supposedly effectuated.

In Paragraph 117 of their Answer, Defendants expressly admit that they relied on Plaintiff's May, 2020, shutdown notice, which they characterize as a "public statement of abandonment" as clearance to register a trademark for Adopt Me! with the USPTO.  This implies that they believed that Plaintiff had enforceable rights to the Adopt Me mark up until the May, 2020, notice was posted, since the Defendants would not have needed to wait for or rely on such a clearance if Plaintiff had already abandoned the mark prior to May, 2020. The Defendants' belief that Plaintiff only abandoned their mark in May, 2020, is supported by their allegation that "Impulse's intent to permanently discontinue any such offering was affirmed through its own public statement that it was 'shutting down' and directing traffic to boredhumans.com, as shown at Exhibit 1." (Counterclaims, ¶ 21) Defendants further confirm this belief by qualifying an allegation with the statement, "On information and belief, after making its public statement of abandonment…." (Counterclaims, ¶ 31)

Defendants then contradict their admission in Paragraph 117 of their Answer and their allegations in Paragraphs 21 and 31 of their Counterclaims multiple times, by alleging that Plaintiff never established trademark rights in Adopt Me, or that Plaintiff had already abandoned its rights in or before 2011 or 2017, when Defendants first began using Adopt Me! for their virtual game on Roblox.  For example, Defendants allege that "Impulse failed to use the term Adopt Me in a

manner sufficient to establish or maintain common law rights," (Counterclaims ¶ 13) and deny that Plaintiff continuously used the trademark "Adopt Me" in commerce since 2000 in a manner sufficient to establish common law trademark rights (Answer ¶ 16). Defendants further assert that as of 2011 or earlier, "Impulse failed to use the term Adopt Me in a manner sufficient to establish or maintain common law rights." (Counterclaims ¶ 13) Then, Defendants deny that Plaintiff owned trademark rights in and to Adopt Me when Defendants began using the name (i.e. in 2017). (Answer ¶ 16) Then, Defendants allege, "At the time Defendants' and Counterclaim Plaintiffs' Adopt Me! game was developed [(i.e. in 2017)], Impulse did not have sufficient use to establish or maintain common law trademark rights in and to Adopt Me for online games and related services." (Counterclaims ¶ 67) Defendants repeat this last claim in Paragraphs 16, 17, and 35 of their counterclaims, where they argue that by 2017, Plaintiff's use was insufficient to maintain common law rights, making Defendants the senior user of the mark.

As a result, the Defendants' contradictory allegations in their pleadings undermine the pleading of the affirmative defense of abandonment. First, Defendants' allege that the Plaintiff never had enforceable rights in the Adopt Me mark. However, abandonment presumes that a party previously held rights but later relinquished them. If Plaintiff never had rights in the Adopt Me mark, then there were no rights to abandon, making Defendants' affirmative defense of abandonment immaterial and impertinent. Then, Plaintiffs allege that Plaintiff had already abandoned its mark before 2017. Yet, if Plaintiff had already abandoned the mark before 2017, then the 2020 shutdown notice could not have been an act of abandonment. If Plaintiff still had rights in 2020 that could be abandoned by the 2020 shutdown notice, then Defendants' prior assertions that Plaintiff abandoned the mark before 2017 are factually and legally incorrect.

There is a similar contradiction between Defendants' defense of abandonment and their own counterclaims that Defendants became the senior holders of the Adopt Me mark and that Plaintiffs then infringed on their mark.  In their counterclaims, Defendants vaguely allege that Plaintiff engaged in "sporadic and token" use of the Adopt Me trademark after 2017, but still claim this use was "likely to cause confusion" with their brand. (Counterclaims ¶¶ 51, 73)  If Plaintiff's use was strong enough to cause confusion and be infringing, then it was also strong enough to maintain trademark rights, contradicting any claim of abandonment.  Defendants' allegations in Paragraphs 55 of their answer and Paragraph 67 of their counterclaims create an even deeper contradiction. In these sections, Defendants explicitly claim that Plaintiff had no rights to the "Adopt Me" mark when Defendants launched their game in July, 2017. These statements imply that, if Plaintiff had rights at any point, they were abandoned before 2017.  Defendants repeat this claim in Paragraphs 16, 17, and 35 of their counterclaims, where they argue that by 2017, Plaintiff's use was insufficient to maintain common law rights, making Defendants the senior user of the mark.  However, if Plaintiff abandoned the mark before 2017, then Plaintiff could not have later infringed on Defendants' trademark. If Plaintiff was continuously using the mark after 2017, then Plaintiff never abandoned it—contradicting Defendants' abandonment claim.

"A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Pruco Life Ins. Co. v. Wilmington Tr. Co.*, 721 F.3d 1, 11 (1st Cir. 2013).  Yet in their pleadings, Defendants continuously contradict their own assertions of fact in ways that undermine their affirmative defense of abandonment. For this reason, the Court should not credit any of the Defendants' allegations that Plaintiff abandoned its mark.

*Defendants' Own Evidence and Allegations Contradict Their Abandonment Defense*

The evidence that Defendants themselves have submitted to the Court makes their assertion of the affirmative defense of abandonment implausible because it shows that Plaintiff never ceased using the Adopt Me mark in commerce.

- Defendants presented this Court with a 2011 podcast interview in an attempt to show that Plaintiff was not actively maintaining the AdoptMe.com website. (Answer (DKT 32), Exhibit 7)  This document actually confirms that the site was in active commercial use at the time. In the podcast transcript, Plaintiff explicitly states that AdoptMe.com was generating revenue from Google AdSense, at times earning up to $5,000 per month, and consistently receiving approximately 5,000 visitors per day for over a decade. Rather than supporting Defendants' claim of abandonment, this evidence proves the opposite—it establishes that Plaintiff was continuously operating the site in commerce, directly contradicting the notion that the mark had lost its significance as a source identifier.

- Defendants presented this Court with historical search engine statistics from June and July 2017 in an attempt to claim that Plaintiff's website was not ranked #1 for the term "Adopt Me" at the time of their game's launch. (Answer (DKT 32), Exhibit 6) However, this same document also demonstrates that AdoptMe.com remained highly ranked in search results for the term "Adopt Me" and was actively receiving traffic from those searches. Furthermore, this document confirms that as of 2017, over 1,900 external websites were linking to AdoptMe.com, demonstrating strong consumer recognition and further negating any claim of abandonment or loss of distinctiveness.  If "Adopt Me" had been abandoned by 2017, those metrics would not exist.

- The copy of the AdoptMe.com Flash game shutdown notice posted May 5, 2020, that Defendants have submitted to the Court also shows usage of the Adopt Me mark, as it was an official communication directly related to Plaintiff's Adopt Me business. (Answer (DKT 32), <u>Exhibit 1</u>) The notice maintained consumer association with the Plaintiff's mark by informing users about the status of the game.  Courts have held that maintaining public recognition of a mark can be sufficient to constitute commercial use. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1196 (11th Cir. 2001) (mark's use as a source identifier for downloadable software constituted use in commerce, even in the absence of any active sales).

- <u>Exhibit 1</u> to the Declaration of Uplift's Senior Legal Counsel, Nicholas Shawyer (DKT 14-2)("Shawyer Dec. Ex. 1") submitted by Defendants in support of their Motion to Strike and Dismiss (DKT 14) provides evidence that, as of May, 2020, Plaintiff still claimed to own the Adopt Me mark and also provides evidence of the behind-the-scenes negotiations between Defendants and Plaintiff regarding a sale of the Plaintiff's Adopt Me mark, further demonstrating that Plaintiff had no intent to abandon the "Adopt Me" mark.  Courts have held that the mark holder's attempt to sell or license a trademark constitutes evidence of continued interest in maintaining its rights. *See, e.g.*, *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053 (2d Cir. 1985).

- A Reddit thread that Defendants have submitted to this Court to demonstrate lack of consumer interest in Adoptme.com in 2022, also shows the Plaintiff promoting

the AdoptMe.com game and consumer awareness of Plaintiff's Adopt Me iOS app. (Answer (DKT 32), <u>Exhibit 8</u>)

- Paragraph 19 of Defendants Answer to the Complaint shows that in 2024, Adopt Me was still being used in commerce, as Defendants allege, "In 2024, Banner ads appear to have been added to adoptme.com."

- Defendants never allege anywhere in their Counterclaim that Plaintiff actually shut down its adoptme.com website at any time, in spite of any notice that may have been posted in May, 2020. In fact, in Paragraph 51 of the Defendants' Counterclaims, Defendants allege that Plaintiff continued to own and use Adoptme.com after May, 2020, and engaged in "sporadic and token" use of the Adopt Me mark. Even such sporadic use may constitute use in commerce. *See Crash Dummy Movie,* 601 F.3d at 1392.

The limited amount of evidence that the Defendants themselves have submitted to this Court in support of their defenses and claims against the Plaintiff are, in fact, sources of evidence that undermines Defendants' defenses and claims and show that Plaintiff never abandoned or intended to abandon its Adopt Me mark. Coupled with the Defendants' obviously contradictory assertions about the timing and validity of Plaintiff's acquisition of and abandonment of rights to the Adopt Me mark, these fatally undermine Defendants' assertion of the affirmative defense of abandonment, and the abandonment defense should therefore be struck from Defendants' Answer as insufficient.

### 2.    **Affirmative Defense No. 2 (Laches)**

Defendants assert laches as an affirmative defense without alleging any facts to support the defense. Nor could they. The laches defense is unavailable to Defendants under the circumstances

10

of this case due to the applicability of the doctrine of progressive encroachment. To succeed in their laches defense, a defendant must prove by a preponderance of the evidence that the plaintiff had knowledge of the defendant's infringement, that the plaintiff inexcusably and unreasonably delayed in bringing its action; and that the plaintiff's delay prejudiced the defendants. *Smartling, Inc. v. Skawa Innovation, Ltd.*, 358 F. Supp. 3d 124, 153 (D. Mass. 2019).  However, even in cases where a plaintiff had knowledge of a defendant's infringement of its mark, and the defendant was prejudiced by the plaintiff's inaction, the plaintiff's delay in bringing an action will be found reasonable and excusable where the defendant's infringement only gradually expanded and encroached upon the market for the plaintiff's mark.  *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro Crédito Oriental*, 698 F.3d 9, 21 (1st Cir. 2012).  In such cases, the plaintiff is excused for delaying in bringing suit until such time as the defendant "redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks."  *Id.* at 22; *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002) (holding that laches does not apply where the defendant progressively expands their use of the disputed mark, increasing consumer confusion over time).

In this case, Defendants have progressively increased their commercial use of the "Adopt Me!" mark, including expanding into retail toys, licensing agreements with Hasbro and Jazwares, and high-profile promotional partnerships with McDonald's and other major brands.  In addition to continued infringement, reverse confusion increased exponentially. Defendants' extensive branding and aggressive marketing have led to continued misdirected emails from consumers who mistakenly believe Plaintiff is responsible for Defendants' game and in-game issues and who want the Plaintiff to refund to them money that they have lost on the Defendants' game. These

misdirected refund requests demonstrate that Defendants' unauthorized use of the mark is not simply a theoretical trademark issue—it is actively damaging Plaintiff by exposing it to financial liability for transactions in Defendants' game.

Because Defendants' infringement is actively increasing in scope and causing financial, legal, and reputational harm to Plaintiff, the doctrine of laches does not apply, and the defense must be stricken.

### 3.    Affirmative Defense No. 3 (Estoppel)

Defendants' Third Affirmative Defense asserts estoppel without identifying any specific conduct by Plaintiff that could possibly justify the application of this defense.  To successfully assert estoppel, Defendants must plead "an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and . . . , that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Cappalli v. BJ's Wholesale Club*, 904 F. Supp. 2d 184, 196 (D.R.I. 2012).

Here, Defendants fail to plead any facts whatsoever indicating that Plaintiff made any sort of representation or engaged in conduct directed at the Defendants with the purpose of inducing the Defendants to act in reliance thereon.  Because Defendants' estoppel defense is nothing more than a vague and unsupported assertion, it should be stricken.

### 4.    Affirmative Defense No. 4 (Acquiescence)

To assert acquiescence, Defendants must establish that, "1) the plaintiff actively represented that it would not assert a right or claim, 2) the delay between active representation and assertion of the right was not excusable and 3) the delay caused the defendant undue prejudice."

*Operation ABLE of Greater Bos., Inc. v. Nat'l Able Network, Inc.*, 646 F. Supp. 2d 166, 172 (D. Mass. 2009).

Defendants fail to allege anywhere in their pleadings that Plaintiff ever represented to them that it would not assert its rights or claims against them, or any of the other necessary elements of an acquiescence defense. Contrary to Defendants' claim of acquiescence, Plaintiff actively enforced its trademark rights in 2020 as it became aware of the extent of confusion in the marketplace, explicitly notifying Defendants of its ownership of the "Adopt Me" mark and the consumer confusion Defendants were causing. Plaintiff's actions, which are documented in evidence that <u>Defendants themselves</u> have submitted to the Court, include:

• Plaintiff's direct notification to Defendants: Plaintiff informed Defendants of consumer confusion caused by their use of the Adopt Me! mark, as Plaintiff had been using the mark for twenty years. (Shawyer Decl. 1); and

• Plaintiff's assertion of trademark ownership: Plaintiff explicitly asserted that any sale of AdoptMe.com would include a trademark assignment, confirming that it did not consent to Defendants' continued use of the mark. (Shawyer Decl. Ex. 1).

In addition, on August 20, 2020, Plaintiff formally sent an email to Defendants' counsel, Morrison Rothman LLP, officially ending the AdoptMe.com sale negotiations. (*See* Complaint ¶¶ 88, 89). In that email, Plaintiff explicitly reaffirmed its continued intent to use the mark, stating: "I am going to try to create a new version of AdoptMe in the form of a mobile app… I already am almost finished with a demo version, so I should have it launched soon." If Plaintiff was affirmatively working on a new version of "Adopt Me," there was no consent—express or implied—to Defendants' use of the name.

Furthermore, the defenses are contradictory.  The doctrine of progressive encroachment also bars an acquiescence defense where an alleged infringer gradually expands their use of the mark, increasing the likelihood of confusion over time. *See ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002) (holding that progressive encroachment prevents equitable defenses such as laches and acquiescence).  In this case, Defendants dramatically expanded their use of the "Adopt Me!" mark after 2019, including entering into licensing deals with Hasbro and Jazwares for toy production.

Because Defendants have not alleged any facts to support an acquiescence defense and because the evidence Defendants submitted to the Court strongly undermines an acquiescence defense, the Court should strike this woefully insufficient defense from Defendants' answer.

### 5.    Affirmative Defense No. 5 (Statute of Limitations)

Defendants' Fifth Affirmative Defense asserts that Plaintiff's claims are barred by the statute of limitations for toy sales from the mid-2000s. However, trademark infringement claims— whether under the Lanham Act or common law—are governed by the doctrine of laches, not a strict statute of limitations. *See Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985) ("The Lanham Act does not contain a statute of limitations. In determining when a plaintiff's suit should be barred under the Act, courts have consistently used principles of laches as developed by courts of equity.").

Further, Plaintiff's claims are not limited to historical toy sales but also encompass Defendants' continued and expanding use of the "Adopt Me" brand in ways that cause consumer confusion.  Defendants' own product model contradicts their claim that Plaintiff's toy-related rights expired due to the passage of time. The "Adopt Me" mark remains active for online gaming and retains residual goodwill in the plush toy market.  Relately, Defendants' interest in

14

purchasing the AdoptMe.com domain in 2020 was likely driven, at least in part, by their recognition of the existence of Plaintiff's mark and their desire to use it for toy-related business. Toy licensing is a significant aspect of Defendants' Adopt Me! brand, and toy buyers frequently log into their PlayAdopt.me website to redeem their free virtual item codes. Likewise, the success of the online Adopt Me! game directly influences toy sales, making the two markets inextricably and synergistically linked. The same was true when Plaintiff sold its own Adopt Me toys. Therefore, whatever value AdoptMe.com had to Defendants, it inherently involved toy-related business, as toys and their online game are commercially integrated.

Because trademark claims are governed by laches and not a fixed statute of limitations, and because Plaintiff's continuing use of the Adopt Me brand for online games is inextricably linked to goodwill from earlier plush toy sales, the Defendants' Fifth Affirmative Defense must be stricken.

### 6.    **Affirmative Defense No. 6 (Unclean Hands)**

Defendants assert that Plaintiff's claims are barred by unclean hands, but they fail to allege any facts amounting to any sort of misconduct by Plaintiff. An unclean hands defense requires Defendants to show some "fraud, unconscionability, or bad faith on the part of the plaintiff" relevant to the Plaintiff's claims. *Donoghue v. IBC/USA (Publ'ns), Inc.*, 886 F. Supp. 947, 954 (D. Mass. 1995). Here, Defendants fail to allege a single fact showing any fraudulent, unconscionable or bad faith conduct by Plaintiff, and cannot. Since Defendants have not alleged any facts supporting unclean hands, this defense must be stricken.

## IV. MOTION TO DISMISS COUNTERCLAIMS

### A.  LEGAL STANDARD FOR DISMISSING CLAIMS

15

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mayale-Eke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 754 F. Supp. 2d 372, 375 (D.R.I. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). To determine plausibility, the Court must first review the counterclaim and separate conclusory legal allegations from allegations of fact. *See Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.*

To state a plausible claim, a counterclaim need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 554); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

## B.  ARGUMENT FOR DISMISSING CLAIMS

Defendants' counterclaims fail to state a claim upon which relief may be granted, and they should therefore all be dismissed.

### 1.  <u>First Counterclaim: Declaratory Judgment</u>

Defendants' declaratory judgment counterclaim should be dismissed because: it is redundant of Defendants' affirmative defense of abandonment; it serves no useful purpose; it is

undermined by Defendants' contradictory claims about whether and when plaintiff abandoned its rights; and it is belied by the evidence submitted to the Court by the Defendants.

### a. Redundancy

Defendants' declaratory judgement counterclaim should be dismissed because it is redundant and unnecessary, since Defendants have already asserted abandonment as an affirmative defense in their Answer. Since the issue of abandonment will necessarily be litigated as part of their defenses to the main claims in this proceeding, a separate counterclaim for declaratory relief serves no independent legal purpose. Courts routinely dismiss counterclaims that merely mirror affirmative defenses, as they do not present a distinct legal controversy requiring separate adjudication. *See, e.g.*, *Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842, 851 (N.D. Ill. 1990) (dismissing defendant's counterclaim that merely duplicated defendant's affirmative defense to plaintiff's claim). Allowing Defendants to maintain this counterclaim would waste judicial resources and create unnecessary duplication in the proceedings. A declaratory judgment must resolve a legal dispute that is not otherwise being adjudicated in the case, and here, the abandonment issue will already be litigated. Accordingly, Defendants' counterclaim for declaratory judgment of abandonment should be dismissed as procedurally improper and redundant.

### b. No Useful Purpose

Even if a declaratory judgment claim presents an actual case or controversy, courts have broad discretion under 28 U.S.C. § 2201 to decline jurisdiction when the requested relief serves no useful purpose. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("The Declaratory Judgment Act is an enabling Act, which confers discretion on the courts rather than an absolute

right upon the litigant."); *Covidien LP v. Esch*, 993 F.3d 45, 52 (1st Cir. 2021).  Here, Defendants' counterclaim for declaratory judgment of abandonment serves no useful purpose because:

- Defendants have no legal interest in whether Plaintiff's Adopt Me mark is abandoned. Defendants already assert that they hold senior trademark rights and a USPTO registration for the Adopt Me mark. A declaration of abandonment would add nothing to their existing legal position.

- Even if Plaintiff abandoned the Adopt Me mark, Defendants would not gain any additional rights. The Lanham Act already gives registered trademark holders (such as Defendants) a presumption of ownership, making this declaratory judgment unnecessary. *See* 15 U.S.C. §1115(a).

- A declaratory judgment would not prevent Plaintiff from asserting priority based on common law use. Even if Plaintiff were declared to have abandoned the mark at some prior point, Plaintiff could still claim a new common law right based on subsequent use, making this ruling essentially advisory.

Because Defendants' abandonment defense is already part of this case, the Court should decline jurisdiction over this redundant and unnecessary counterclaim.

   c. *Defendants Contradict the Defense with Their Own Allegations and Evidence*

As demonstrated above, in the discussion of Defendants' affirmative defense of abandonment, Defendants have asserted vague and contradictory allegations in support of their claim that Plaintiff abandoned the Adopt Me mark.  Rather than asserting a clear and specific basis for their defense, Defendants present conflicting narratives about (1) whether Plaintiff ever had enforceable trademark rights, (2) if and when Plaintiff allegedly abandoned those rights, and (3) how the alleged abandonment was supposedly effectuated.

18

Throughout their Answer and Counterclaims, Defendants claim that Plaintiff abandoned the mark:

- As early as 2000, due to "insufficient use" (Answer ¶ 16).

- As early as 2011, due to "insufficient use" (First Counterclaim ¶ 13).

- Early 2010s to 2020 from lack of consumer recognition. (First Counterclaim ¶ 14).

- By July, 2017, because Plaintiff allegedly had not maintained rights at the time Defendants launched Adopt Me! (Answer ¶¶ 55; First Counterclaim ¶¶ 16, 17, 35; Second Counterclaim ¶¶ 44, 47; Third Counterclaim ¶¶ 67, 70).

- In May 2020, due to the AdoptMe.com shutdown notice (Answer ¶¶ 16, 78, 95-98, 102, 104, 117, 273; First Counterclaim ¶¶ 21, 23, 31, 35; Second Counterclaim ¶ 45; Third Counterclaim ¶¶ 68).

The paragraphs referenced above demonstrate that the Defendants are unsure whether to claim Plaintiff never had rights in Adopt Me or instead claim that Plaintiff once had rights in Adopt Me but abandoned them, and reflect the Defendants lack of any evidence to point to in order to support their assertion that Plaintiff abandoned its mark prior to May 2020.

Furthermore, the Defendants' own submissions to the Court contradict their claim that Plaintiff abandoned the Adopt Me mark. For example, Exhibit 7 to Defendants' Answer (DKT 32) shows Adopt Me in commercial use in 2011, when AdoptMe.com was making approximately $1,600 per month and had made as much as $5,000 per month two to three years prior. Exhibit 6 to Defendants' Answer (DKT 32) lists a total of 1,900 incoming links to AdoptMe.com in July 2017, showing continued recognition of Plaintiff's mark. Exhibit 1 of Defendants' Answer (DKT 32) shows usage of the Adopt Me mark, since the May 5, 2020, notice was an official communication with Plaintiff's customers that directly related to Plaintiff's

19

Adopt Me business by informing its customer base about the status of Plaintiff's website and game. Finally, <u>Exhibit 1</u> to the Shawyer Declaration (DKT 14-2) filed in support of Defendants' Motion to Strike and Dismiss (DKT 14) provides evidence of Plaintiff's continued interest in maintaining its trademark rights and lack of intent to simply abandon them ("If I sell the AdoptMe.com domain to somebody else, I would include the code for my site, and also assign the rights to the unregistered trademark to the buyer") and Defendants' belief that Plaintiff's mark continued to have commercial value.

Because Defendants' declaratory judgment counterclaim is redundant of Defendants' affirmative defense of abandonment, serves no useful purpose and is undermined by Defendants' contradictory claims about whether and when Plaintiff abandoned its rights and by the evidence submitted to the Court by Defendants, it should be dismissed.

## 2. <u>Second and Third Counterclaims: Trademark Infringement Under 15 U.S.C. §§ 1114(1) and 1125(a)</u>

Defendants assert trademark infringement counterclaims under both 15 U.S.C. §1114(1) and 15 U.S.C. §1125(a), arguing that Plaintiff's continued use of the "Adopt Me" mark infringes on Defendants' Adopt Me! mark. Defendants' counterclaims should be dismissed because they fail to plausibly allege the necessary element that Plaintiff's use of the Adopt Me mark was likely to cause consumer confusion.

To successfully assert claims of trademark infringement under 15 U.S.C. §1114(1) (i.e. federal trademark infringement), a claimant must sufficiently allege "(1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." *Total Petro. P.R. Corp. v. Landmarks Media, Inc.*, No. 17-1402, 2017 U.S. Dist. LEXIS 178817, at *13 (D.P.R. Oct. 27, 2017); 15 U.S.C. §1114(1). The three essential elements of a trademark infringement claim under 15 U.S.C. §1125(a) (i.e. common law trademark

infringement) are "(1) that claimant uses and owns a mark; (2) that defendant uses an identical or similar mark without permission; and (3) that there is a likelihood that defendant's mark will confuse the public." See *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir. 2008); 15 U.S.C. §1125(a). Thus, both Defendants' federal and common law trademark infringement claims require the Defendants to adequately allege that Plaintiff has used the Adopt Me mark in a way that creates a likelihood of confusion about the mark on the part of the public. Threadbare claims that use of a mark causes public confusion, without additional factual allegations that raise the claim from conceivable to plausible, are not sufficient to support a claim of infringement. *See Iqbal*, 556 U.S.at 678.

Defendants' counterclaims offer nothing more than vague assertions without any factual support. Defendants merely offer the conclusory assertion that Plaintiff engaged in "sporadic and token use" of the "Adopt Me" trademark on AdoptMe.com "in a manner likely to cause confusion or mistake." (Defendants' Answer, Second Counterclaim ¶ 51, Third Counterclaim ¶ 73). This vague allegation does not meet the *Iqbal/Twombly* pleading standard, which requires sufficient factual allegations to support a plausible claim for relief.

Defendants undermine their sole allegation of consumer confusion when, in the same sentence, they characterize Plaintiff's use of the Adopt Me mark as "sporadic" and "token." When determining whether there exists a likelihood of confusion, courts will weigh the number and extent of instances of actual confusion. *Channing Bete Co. v. Greenberg*, No. 3:19-cv-30032, 2021 U.S. Dist. LEXIS 195652, at *12-13 (D. Mass. July 12, 2021). "[A]llegedly infringing conduct must create 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care. [I]solated, anecdotal instances of actual confusion may be *de minimis* and may be disregarded in the confusion analysis." *Id.* at *13 (citations omitted). If

21

Plaintiff's use of Adopt Me was sporadic and token, then it was isolated and *de minimis*, and not likely to confuse an appreciable number of consumers.

Even if Defendants have sufficiently expressed an allegation of consumer confusion, Defendants then fail to allege any concrete instances of consumer confusion, such as consumers mistakenly believing that Plaintiff's website was affiliated with their game, consumer complaints, reviews, or social media posts indicating confusion. Additionally, Defendants do not claim that they lost business, licensing opportunities, or goodwill due to Plaintiff's alleged use of the mark. Nor do they provide any survey or expert evidence supporting a likelihood of confusion. Defendants' sole factual support for their allegation of consumer confusion consists of the following insufficient allegations: that Plaintiff abandoned use of Adopt Me in connection with plush toys and off-line physical products before Defendants ever started using the Adopt Me mark, and that the Plaintiff has not resumed this use to this day (Counterclaims, ¶¶ 9, 10, 43 and 66); that Plaintiff has owned and used a website with the domain name Adoptme.com since about 2000, approximately 17 years before Defendants started to use the Adopt Me! mark (Counterclaims ¶¶ 12, 18, 51 and 73), but that Plaintiff also allegedly posted a notice on that website stating that it was shutting down and then discontinued the offering of games and products on Adoptme.com (Counterclaims, ¶¶ 18, 20, 45, 68 and 73); that Plaintiff may have invested in a new product also called Adopt Me though Defendants never specify what that product is or that it could be confused with Defendants' Adopt Me! (Counterclaims, ¶ 24); that Plaintiff has an Adopt Me iOS app that is inoperable and cannot be logged into by members of the public, and that Defendant lacks an Adopt Me android app (¶¶ 32, 53, 54, 75, 76). These are the sum total of factual allegations upon which Defendants base their allegation of a likelihood of consumer confusion. It is therefore highly implausible, based on the Defendants' own allegations, that there is a likelihood that any member

of the public would even be able to access Plaintiffs' Adopt Me, let alone confuse Plaintiff's use of Adopt Me with Defendants' Adopt Me![1]

Furthermore, Defendants' trademark infringement counterclaims directly contradict their first counterclaim for declaratory judgment of abandonment. Defendants allege that Plaintiff abandoned all rights to the "Adopt Me" mark before Defendants launched their game in 2017, claiming that Plaintiff's prior use was insufficient to establish or maintain common law rights. If this were true, then Plaintiff's alleged subsequent use of the mark could not have caused confusion, as an abandoned mark would lack the public recognition necessary to mislead consumers.

Because Defendants' federal and common law trademark infringement counterclaims fail to allege sufficient facts supporting a likelihood of confusion and contradict their abandonment argument, they should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court strike Defendants, Uplift Games, LLC, Treetop Games LLC, and Lionfield Investments Ltd's,  affirmative defenses

---

[1] Allegations contained in Plaintiff's Complaint about members of the public mistakenly contacting Plaintiff because they believe that Plaintiff is the purveyor of Adopt Me! (See, e.g., ¶ 126 of the Complaint) cannot serve as evidence of a likelihood of consumer confusion supporting Defendants' federal and common law trademark infringement counterclaims.  The allegations in Plaintiff's complaint are instead evidence of "reverse confusion" supporting Plaintiff's trademark infringement claims. "Under the classic 'forward confusion' theory, a trademark holder alleges customers will purchase goods from the infringing junior user under the mistaken belief that they are purchasing from the senior user. *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 71-72 (1st Cir. 2008).  In contrast, under a "reverse confusion" theory, customers purchase the senior user's (i.e. Plaintiff's) goods under the mistaken belief that the junior user (i.e. Defendant) is the source of the senior user's goods. *Id.* The senior user (i.e. Plaintiff) comes to be seen as the unauthorized infringer, and the junior user's (i.e. Defendants') use of the mark thus injures the senior user's reputation and impairs its goodwill. *Id.*  Harm from the reverse confusion may occur because the junior user saturates the market and overwhelms the senior user, causing harm to the value of the senior user's trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets. *Id.*; *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 39 (1st Cir. 2006). In short, "reverse confusion" occurs when a larger, later user overwhelms and injures the brand of a smaller, senior user, and that is what Plaintiff has alleged in its Complaint.  Consumers mistakenly contacting Plaintiff believing that Plaintiff is Defendant demonstrates that consumers are attributing Defendants' potentially harmful game to Plaintiff's mark, not Plaintiff's game to Defendants' mark.

of abandonment, laches, estoppel, acquiescence, statute of limitations and unclean hands pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and to dismiss Defendants' counterclaims for (1) Declaratory Judgment of Abandonment, (2) Trademark Infringement under 15 U.S.C. §1114(1), and (3) Trademark Infringement under 15 U.S.C. §1125(a), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Plaintiff,*

IMPULSE COMMUNICATIONS, INC.,
By Its Attorneys,

/s/ Joseph Hoefferle, Jr.
Chip Muller, Esq. (#7686)
Joseph Hoefferle, Jr., Esq. (#8421)
Muller Law, LLC
47 Wood Avenue
Barrington, RI  02806
(401) 256-5171 (ph.)
(401) 256-5025(fax)
chip@mullerlaw.com
joe@mullerlaw.com

## CERTIFICATION

I hereby certify that on this 25th day of February, 2025, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's CM/ECF system and the filing is available for viewing and downloading from the Court's CM/ECF System.

/s/   Joseph Hoefferle, Jr., Esq.