## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Impulse Communications, Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:24-cv-00166-JJM-LDA |
| | : | |
| Uplift Games LLC, Treetop Games LLC | : | |
| and Lionfield Investments Ltd, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS UPLIFT GAMES LLC, TREETOP GAMES LLC AND LIONFIELD INVESTMENTS LTD'S MEMORANDUM IN OPPOSITION TO PLAINTIFF IMPULSE COMMUNICATIONS, INC.'S MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) AND DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants Uplift Games LLC ("Uplift"), Treetop Games LLC ("Treetop") and Lionfield Investments Ltd ("Lionfield") (collectively, "Defendants") jointly submit this memorandum in opposition to Plaintiff Impulse Communications, Inc.'s ("Plaintiff") February 26, 2025 motion and supporting memorandum (ECF No. 33-1, the "Motion") to strike the six affirmative defenses asserted by Defendants and dismiss the three counterclaims filed by Defendants in their February 5, 2025 Answer and Counterclaims (ECF No. 32, the "Ans."). Plaintiff's Motion is plainly deficient in light of the applicable pleading standard for affirmative defenses, which do not require that supporting facts be included in the pleading, and the significant factual allegations that render the relief sought in the counterclaim at least plausible. The Motion should be denied in its entirety.

## I.    INTRODUCTION

While Plaintiff spends much of its time arguing the meaning or strength of evidence

submitted in Defendants' Answer and Counterclaims, the relevant analysis when considering Plaintiff's Motion is whether Defendants have met the applicable legal standard for proper pleading of affirmative defenses and counterclaims. Defendants note for the record that they disagree with Plaintiff's interpretation and characterization of the relevant evidence and specifically reserve all such arguments for the appropriate opportunity.

In its Motion, Plaintiff summarily argues that each of Defendants' affirmative defenses of (1) abandonment, (2) laches, (3) estoppel, (4) acquiescence, (5) statute of limitations and (6) unclean hands should be stricken, "because they are insufficient given the lack of facts alleged by Defendants." Motion at 1. However, the applicable pleading standard in the First Circuit permits defenses to be alleged generally. In fact, a motion to strike an affirmative defense should not be granted unless there is no question of fact or law that might allow a particular defense to succeed ***and*** Plaintiff can show prejudice by inclusion of the defense in the case. *Markham Concepts, Inc. v. Hasbro, Inc*., 2017 WL 4685074, at \*3 (D.R.I. Oct. 17, 2017). Here, Plaintiff has not made or even attempted to make this two-part showing in its initial pleading, thereby waiving it as a means to support the pending motion. *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F.Supp.2d 298, 349 (D.Mass July 8, 2010) citing *Hypertherm, Inc. v. American Torch Tip Co.*, 2007 WL 2695323, \*2 (D.N.H. Sept. 11, 2007) ("moving party cannot raise new arguments and issues in a reply that it failed to address in the original motion") (citing *Wills v. Brown University*, 184 F.3d at 27); EnergyNorth Natural Gas, Inc. v. Century Indemnity Co., 2007 WL 776124, \*1 (D.N.H. March 15, 2007) ("[a]rguments raised for the first time in a reply brief, however, are waived") (citing *Wills v. Brown University*, 184 F.3d at 27).  Accordingly, the motion to strike should be denied.

Plaintiff also seeks dismissal of Defendants' Declaratory Judgment Counterclaim as

"redundant," "contradictory" and "serv[ing] no useful purpose." Motion at 16-20. This argument ignores the right of Defendants to seek a declaratory judgment even though abandonment also is available as a defense. *To-Ricos, Ltd. v. Productos Avicolas Del Sur, Inc.*, 118 F.4th 1, 10 and n.15 (1st Cir. 2024); *see also Kellogg v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000). Plaintiff's argument also ignores Rule 8(d)(3), which specifically allows a party to plead as many claims or defenses as it has "regardless of consistency." Fed. R. Civ. P. 8(d)(3). Instead, Plaintiff asks this Court to use its discretion to declare that a declaratory judgment regarding Plaintiff's ownership of the very trademark rights on which it premises its entire claim serves no useful purpose. Motion at 17-20. As a basis for this request, Plaintiff relies on distinguishable precedent regarding the staying of federal claims during a parallel state court proceeding. Motion at 17-18 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). As a result, Plaintiff's request for dismissal of Defendants' Declaratory Judgment Counterclaim should be denied.

Finally, Plaintiff asks this Court to dismiss Defendants' Infringement Counterclaims because Defendants purportedly failed to allege likelihood of consumer confusion or cite any concrete instances of actual confusion. Motion at 20-23. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a "plausible" claim for relief. Fed. R. Civ. P. 12(b)(6); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim, the complaint must recite facts sufficient to "raise a right to relief above the speculative level." *Id*. at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Id.*

In this case, Defendants' Counterclaims make specific factual allegations bearing on "likelihood of confusion" under the factors set forth in controlling First Circuit authority. When

accepted as true, these allegations state a plausible claim for trademark infringement under the *Twombly-Iqbal* standard. For these reasons, Plaintiff's motion to dismiss also should be denied.

## II.   FACTUAL BACKGROUND

Defendants have previously provided a detailed background to this Court and incorporate the same by reference. (ECF No. 14-1). Given the standard Plaintiff must meet in order to succeed in its current Motion, Defendants limit the background in this Memorandum in Opposition to the following relevant facts.

In 1998, Plaintiff registered the domain name adoptme.com. ECF No. 1 (the "Compl.") at 4, ¶ 12. In 2000, Plaintiff allegedly launched an online virtual pets game titled "Adopt Me." Compl. at 4, ¶ 12. On June 7, 2011, in an interview with DomainSherpa, Eric Borgos, owner of Plaintiff, stated "[t]he reason I love adoptme.com is there is no customer service. I don't answer – there is no email address even. I have a link to my corporate site at the bottom but there is no real – I don't answer questions, I don't do anything. I add new stuff to the site sometimes. But for like five years I did absolutely nothing." Ans. at 41-42, ¶ 13, Ans. Ex. 7. Although more will be learned during discovery, Plaintiff's apparent lack of investment and effort present plausible questions of law and fact as to whether Plaintiff either: (1) established common law trademark rights in and to the term Adopt Me for online games and related services; or (2) established rights but abandoned them after doing "absolutely nothing" for many years. Ans. at 42, ¶ 14, Ans. Ex. 7.

Moreover, to the extent that any common law rights could be said to exist, those rights were explicitly abandoned on or about May 6, 2020, when Plaintiff posted the following notice ("Notice") on adoptme.com (*see also* Ans. Ex. 1):

We are very sorry, but after almost 20 years online, AdoptMe.com is shutting down. Please go to our new site instead at **BoredHumans.com** which has more than **40 fun and silly artificial intelligence (AI) pages** you can use for free online. There are several reasons we could no longer keep AdoptMe.com running, but the main one was the programming was so old that it stopped working recently when we updated the server. Another problem was that the site was programmed in Flash, which was popular in the early 2000s but can't easily be used on mobile devices. And, more recently, we have started receiving angry emails from users of an "AdoptMe" game in Roblox, which is in no way related to our site/company. Numerous people are getting scammed (and maybe hacked?) there and think we are responsible because they mistakenly think we own that game. The sheer volume of these complaints puts us at risk of getting sued or other legal troubles, where we would have to hire a lawyer just to prove we had nothing to do with it.

As shown above, the main reason adoptme.com was shut down was "the programming was so old that it stopped working recently when we updated the server." The posted notice also makes clear that Plaintiff was actually aware of Defendants' Adopt Me! game in Roblox no later than May 2020, and Plaintiff had received information that suggested potential consumer confusion. To the extent it was actionable, Plaintiff's infringement claim became ripe no later than May 2020, but Plaintiff slept on its purported rights until almost four years later, when it filed the instant lawsuit on April 26, 2024.

Defendants began use of Adopt Me! in July of 2017. After Plaintiff affirmed its intent to permanently "shut down" adoptme.com, Defendants Treetop and Lionfield filed for United Kingdom trademark protection for Adopt Me! on September 16, 2020 and United States trademark protection for Adopt Me! on February 4, 2021 for use in connection with numerous goods and services, including, but not limited to, "Downloadable Games software, . . ." in class 09 and "entertainment services, namely, providing on-line interactive computer games, . . ." in class 41. Ans. at 43, ¶ 23. Though admittedly aware of Defendants, Plaintiff did not oppose Defendants'

United States trademark applications (Ans. at 44, ¶ 27) and Defendants' rights were perfected with a priority date of February 4, 2021, when its Adopt Me! trademark was registered by the United States Patent and Trademark Office on January 25, 2022. Ans. at 17, ¶ 91.

The above facts create two areas of relevant examination. The first is the period from July 2017 to May 2020. The examination of this period is focused on whether or not Plaintiff took the steps necessary to establish and maintain common law trademark rights such that it possessed the rights it now attempts to assert against Defendants. The second is the period following Plaintiff's posting of the Notice in May 2020 to the present. The examination of this period is focused on which party established itself as the senior user of the contested mark such that it can assert both trademark ownership and infringement. The examination of each period presents numerous questions of both law and fact.

On May 12, 2020, approximately six (6) days after the posting of the Notice, the parties engaged in discussions regarding the contested mark. Plaintiff was aware of Defendants' use of Adopt Me! at least as early as this date, and Defendants have alleged that Plaintiff was aware of its trademark application for Adopt Me! in 2021. Ans. at 44, ¶¶ 25-26. Despite Plaintiff's clear knowledge and the established lines of communication with Defendants, Plaintiff took no steps to oppose Defendants' trademark application or otherwise enforce its' alleged rights. Ans. at 44, ¶¶ 27-28. Since 2020, Defendants have made significant investments in the Adopt Me! game and have acquired significant consumer recognition as the source of origin for goods and services branded with Adopt Me!. Ans. at 50, ¶ 50. Plaintiff thereafter began sporadic and token use of Adopt Me to establish a pretext for its current claims. Ans. at 50, ¶ 51. After nearly four years of silence, Plaintiff filed the present action on April 26, 2024. Ans. at 45, ¶ 34.

III.  **PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES IS MERITLESS**

    A.  **Legal Standard**

Under Rule 12(f), a party may move to strike an "insufficient defense" from a pleading. Fed. R. Civ. P. 12(f); *R.I. Res. Recovery Corp. v. Travelers Cas. & Sur. Co. of Am.*, 2010 WL 11693625, at *1 (D.R.I. Oct. 8, 2010). The standard to prevail on a motion to strike an affirmative defense is high and requires that a moving party establish that "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the [moving party] would be prejudiced by inclusion of the defense." *Markham Concepts, Inc. v. Hasbro, Inc.*, 2017 WL 4685074, at *3 (D.R.I. Oct. 17, 2017). An affirmative defense "may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives plaintiff fair notice of the nature of the defense." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274 (4th ed.); *see Telecom Brokerage, Inc. v. Gryphone Telecom Consultants, LLC*, 2014 WL 407725, at *1-2 (D. Mass. Jan. 31, 2014) (observing that plaintiffs are not required to plead the specific elements of equitable defenses and "notice pleading" is the standard for affirmative defenses and counterclaims within the First Circuit). This demanding standard reflects the courts' recognition that Rule 12(f) motions almost always require a "premature evaluation of a defense's merits before the necessary factual background is developed." *InMusic Brands, Inc. v. Roland Corp.*, 2022 WL 2128611, at *1 (D.R.I. June 14, 2022).

Defendants' defenses of abandonment, laches, estoppel, acquiescence, statute of limitations and unclean hands present issues of both law and fact and give Plaintiff "fair notice" of the nature of the defenses. Furthermore, Plaintiff presents no argument, much less a convincing one, of prejudice as required in the First Circuit. As a result, Plaintiff's motion to

strike must be denied in its entirety.

**B.  Plaintiff Makes No Attempt To Meet the Relevant Legal Standard for Rule 12(f) Motions**

Plaintiff fails to make any attempt to meet the legal standard governing Rule 12(f) motions. In particular, Plaintiff fails to demonstrate or even claim that no set of facts—and no question of law—could ever allow Defendants' affirmative defenses to succeed. *See Markham*, 2017 WL 4685074 at *3. Nor does Plaintiff make any attempt to demonstrate "prejudice" from the inclusion of the defenses. *Id.* Instead, Plaintiff repeatedly asserts that the defenses either fail to allege any supporting facts or rely on "contradictory" or "implausible" allegations. *See*, *e.g.*, Motion at 5, 6, 8, 12, 13, 18. Plaintiff thus bases its Rule 12(f) motion on the same pleading standard used for Rule 12(b)(6) motions, which requires plaintiffs to allege sufficient facts to state a "plausible" claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).

However, neither the Supreme Court nor the First Circuit has ever applied the *Twombly-Iqbal* standard to Rule 12(f) motions, and this Court has squarely rejected such claims. *See*, *e.g.*, *Owen v. Amer. Shipyard Co. LLC*, 2016 WL 1465348, *2-3 (D.R.I. Apr. 14, 2016) ("holding complaints and affirmative defenses to different standards comports with the language differences in the applicable rules."); *Rhode Island Res. Rec. Corp. v. Travelers Cas. & Surety Co.*, 2010 WL 11693625, *2 (D.R.I. Oct. 8, 2010) ("If Twombly/Iqbal were extended to affirmative defenses, it would encourage yet another area for unproductive motion practice in conflict with Rule 1's dictate that the procedural rules (including Rule 8) be construed and administered to secure the just, speedy, and inexpensive determination of cases.") (citation omitted).

In so doing, the courts have stressed that Rule 8(a) requires plaintiffs to make a "showing" entitling them to relief, while Rule 8(d) requires defendants to merely "state" their defenses. *Owen*,

2016 WL 1465348, *2; Fed. R. Civ. P. 8(a), 8(d). The courts have also noted the unfairness of holding a defendant to the same pleading standard as a plaintiff when the defendant has only 21 days to ascertain its defenses, many of which would be waived if not asserted. *Id.* at *3.

Thus, under the applicable pleading standard in the First Circuit, Plaintiff fails to meet its burden for a Rule 12(f) motion. For this reason alone, the motion should be denied. Furthermore, even if this Court were to apply the heightened *Twombly-Iqbal* standard to affirmative defenses, Plaintiff's motion should still be denied, as Defendants' pleadings provide ample factual allegations to state a "plausible" claim for each of their six defenses, particularly in light of Rule 8(d).

### C.    Plaintiff Makes No Showing That the Abandonment Defense Is "Deficient"

Plaintiff claims that Defendants' abandonment defense should be stricken, because it purportedly contradicts Defendants' assertion that Plaintiff did not establish common law trademark rights in Adopt Me prior to 2020. Motion at 6. This argument fails for at least two reasons.

#### 1.    *Rule 8(d) Expressly Permits "Alternative" Claims.*

First, Plaintiff's argument ignores Rule 8(d), which expressly permits a party to "set out 2 or more statements of a claim or defense *alternatively or hypothetically*, either, in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2) (emphasis added). Furthermore, if a party makes alternative claims, "*the pleading is sufficient if any one of them is sufficient.*" *Id.* (emphasis added).  Finally, the Rule permits a party to state as many claims as it has, "*regardless of consistency.*" Fed. R. Civ. P. 8(d)(3) (emphasis added).

Accordingly, under these principles, Defendants properly alleged two alternative claims in their pleadings: (1) prior to 2020, Plaintiff failed to use its Adopt Me mark in a manner sufficient to establish common law rights (*see* Ans. at 41-42, ¶ 13), and (2) even if Plaintiff did establish

9

such rights, it later abandoned these rights when it issued the "shutdown" notice in 2020. *See* Ans. at 43, ¶ 21; Ans. Ex. 1; Ans. at 44-45, ¶ 31. This is precisely the kind of alternative, "even if" pleading contemplated by Rule 8(d)(2). It is perfectly permissible for Defendants to argue, on the one hand, that Plaintiff did not hold valid trademark rights for plush toys and/or online games, while also arguing that, to the extent the Court finds it does, such rights were abandoned and Defendants became the senior user. Plaintiff's arguments to the contrary are without merit.

### 2. *Plaintiff's "Abandonment" Argument Also Ignores Defendants' Factual Allegations Which Must Be Accepted as True.*

Plaintiff's challenge to the "abandonment" defense relies heavily on fact-based arguments that ignore Defendants' own factual assertions, all of which must be accepted as true. *Iqbal*, 556 U.S. at 678. For example, Plaintiff claims that the abandonment defense "contradicts" Defendants' infringement allegations because Plaintiff could not have infringed the mark if it had already abandoned it. Motion at 7.

However, this argument disregards Defendants' allegations that *after* 2020 Plaintiff began using the mark "in a manner likely to cause confusion" so that Plaintiff could establish a "pretext" for asserting claims against Defendants. Ans. at 50, ¶ 51. This allegation—which must be accepted as true—refutes the alleged contradiction claimed by Plaintiff. This is particularly true in light of Plaintiff's own complaint, which similarly alleges that Plaintiff began expanding its use of the Adopt Me mark after 2020. Compl. at 9-11, ¶¶ 34-46.

Similarly, Plaintiff offers interpretations of several documents attached to Defendants' Answer, claiming they actually show that Plaintiff never abandoned the mark. Motion at 8-9. However, such fact-based arguments cannot support a Rule 12(f) motion, particularly when the parties dispute the significance of the evidence and all reasonable inferences must be drawn in Defendants' favor. *See Asphaltos Trade, S.A. v. Bituven Puerto Rico, LLC*, 2021 WL 965645, at

*2 (D.P.R. 2021) ("[a]ny doubt as to the striking of matter in a pleading should be resolved in favor of the pleading."). Accordingly, Plaintiff fails to present any valid basis for striking the abandonment defense.

### D.    Plaintiff Makes No Showing That the Laches Defense Is "Deficient"

Plaintiff next claims that Defendants' laches defense should be stricken because Defendants purportedly allege no facts to support the defense. Motion at 11. But, as shown above, to prevail in its Rule 12(f) motion, Plaintiff must demonstrate that no conceivable set of facts could support the defense, and Plaintiff makes no such showing here. *Markham*, 2017 WL 4685074 at *3. Plaintiff's argument fails for this reason alone.

1.    *Even Under a Heightened Pleading Standard, Defendants Have Plausibly Alleged a Lack of Diligence and Prejudice Resulting from Plaintiff's Dilatory Action.*

An examination of the record clearly shows that Defendants have plausibly alleged facts sufficient to support the defense of laches. The two elements necessary for laches to apply are: (1) a lack of diligence by the non-moving party in asserting its claims and (2) prejudice to the party asserting the defense. *Museum of Fine Arts, Bos. v. Seger–Thomschitz*, 623 F.3d 1, 10 n.9 (1st Cir. 2010*)*; *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989).

Plaintiff's lack of diligence is supported by the allegations in the Answer and Counterclaims as well as the allegations in Plaintiff's own Complaint. Negotiations between the parties for the purchase of the adoptme.com domain name began and ended in 2020, nearly four (4) years prior to Plaintiff filing this action on April 26, 2024. Ans. at 16, ¶ 85; Compl. at 15-16, ¶¶ 77-85. Although discovery may prove Plaintiff was aware of Defendants' Adopt Me! game much earlier, by its own admission, Plaintiff had actual knowledge of Defendants' use of the trademark Adopt Me! since at least 2020. Ans. at 44, ¶ 25.

With respect to the second element, circumstances that result in prejudice for the moving

party include such investments in and   actions that expanded use of the trademark. *See Pro-Football, Inc. v. Harjo*, 567 F. Supp. 2d 46, 59, 62 (D.D.C. 2008) (holding that laches barred cancellation action against trademark where "[e]conomic prejudice ar[ose] from investment in and development of the trademark") (citation omitted), *aff'd in relevant part*, 565 F.3d 880, 884 (D.C. Cir. 2009) (agreeing that sufficient "evidence of prejudice ... may arise from mere proof of continued investment in the late-attacked mark").

As alleged in Defendants' Answer and Counterclaims, Defendants "have made significant investments in the Adopt Me! game since its inception and have acquired significant recognition as the source of origin for goods and services branded with the Adopt Me! trademark through their continuous use thereof." Ans. at 50, ¶ 50. This is supported by evidence that Adopt Me! has won industry awards, including recognition for being the game with the "most concurrent players" on the Roblox platform at the 2021 Bloxy Awards. Ans. Ex. 9. Many of Defendants' investments were made between 2020 (at which point Plaintiff indisputably knew of Defendants' use of the Adopt Me! trademark for their online game) and the filing of the instant lawsuit nearly four (4) years later. *See* Ans. at 17, ¶ 90; Ans. at 50, ¶ 50; Ans. Exs. 1, 9. "[A] defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights." *Grupo Gigante SA De CV v. Dallo & Co., Inc*., 391 F.3d 1088 (9th Cir. 2004); *see also Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F.Supp. 733, 753 (S.D.N.Y. 1997) (finding prejudice to defendant and applying laches defense where, "[b]y waiting over three and a half years to assert its present claims, the plaintiff precluded the possibility that the defendant could effectively adopt an alternative marketing position"); *Bridgestone/Firestone Research, Inc. v. Automobile Club De L'Quest De La France*, 245 F.3d 1359, 1363 (Fed. Cir. 2001) (finding

"[e]conomic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice.").

2.  *Plaintiff's Progressive Encroachment Theory Is Baseless.*

Plaintiff nevertheless asserts that a laches defense is "unavailable" to Defendants because of the doctrine of "progressive encroachment." Motion at 11. Under this doctrine, a plaintiff in certain circumstances should not be required to sue until it knows or should have known that the defendant has "encroached" on its rights. *See ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002). The doctrine requires a fact-intensive inquiry to determine "whether and when any likelihood of confusion may have ripened into a claim." *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro Crédito Oriental*, 698 F.3d 9, 23 (1st Cir. 2012) (internal citations omitted).

In this case, Plaintiff asserts in conclusory fashion that Defendants "progressively increased" their use of the Adopt Me! mark, which purportedly led to customer confusion in the form of "misdirected emails from consumers." Motion at 11. But, even if Plaintiff could cite evidence for these assertions, the issue could not be resolved without a fully developed record. It therefore provides no basis for a Rule 12(f) motion to strike Defendants' laches defense.

3.  *To the Extent There Is Any Doubt, the Defense Should Remain in the Case, as Laches Is "Normally Not Susceptible to Pretrial Resolution."*

A laches defense "necessarily requires a fact-sensitive inquiry into the particular circumstances of the case...." *Pegasystems, Inc. v. Appian Corporation*, 463 F.Supp.3d 152, 161 (D. Mass. 2020) (quoting *Vineberg v. Bissonnette*, 548 F.3d 50, 57 (1st Cir. 2008)). At this stage, the factual record is disputed (*i.e*., whether there was progressive encroachment and whether Plaintiff's delay was therefore reasonable) and does not include, among other things, evidence of

13

the earliest dates when Plaintiff became aware of Defendants' Adopt Me! game and learned information that might support an actionable claim. Given the conceivable set of facts alleged to support laches, including the nearly four-year delay in Plaintiff attempting to assert any purported rights it had despite full knowledge of the Defendants' activities, to the extent there is any doubt as to whether the defense should be allowed to proceed, the Court should deny Plaintiff's motion to strike the laches defense and allow the factual record to be developed.

### E.    Plaintiff Makes No Showing That the Estoppel Defense Is "Deficient"

Plaintiff seeks to dismiss Defendants' estoppel defense by vaguely alleging that Defendants "fail to plead any facts whatsoever" to support the defense. Motion at 12. But as noted earlier, this is not a proper basis for a Rule 12(f) motion, which requires a plaintiff to show that the defense could never prevail under any set of facts. *Markham*, 2017 WL 4685074 at *3. For this reason alone, Plaintiff's motion should be denied.

Even under a heightened Rule 12(b)(6) standard, Plaintiff's motion must be denied. In the First Circuit, an estoppel defense consists of "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Greene v. Ablon*, 794 F.3d 133, 143 (1st Cir. 2015) (citations omitted). Defendants have alleged sufficient facts to support these elements.

With respect to the first factor, the parties both acknowledge and allege that negotiations occurred in 2020 over the potential sale of the adoptme.com domain from Plaintiff to Defendants. Ans. at 16, ¶ 85; Compl. at 15-16, ¶¶ 77-85. Although the precise nature of certain of those communications is privileged and Plaintiff's selective introduction of certain portions of that correspondence does not tell the full story, suffice it to say that the parties were fully aware of each other and Plaintiff was aware of what Defendants intended to do with its Adopt Me! trademark

following those negotiations. Nowhere has Plaintiff alleged that such communications included a demand that Defendants cease and desist from using the Adopt Me! trademark. The representations made during the course of those negotiations inevitably induced and were intended to induce reliance on behalf of the parties, as thereafter Plaintiff took no action or otherwise attempted to make contact with Defendants for years regarding its use of the Adopt Me! trademark after 2020 until the initiation of this action. *See* Ans. at 45, ¶ 34. Plaintiff's relevant omissions also include its failure to oppose Defendants' February 2021 trademark application for Adopt Me!. *See* Ans. at 44, ¶¶ 25-29. To the extent Plaintiff had any actionable rights, these omissions caused significant detriment to Defendants, as Defendants "have made significant investments in the Adopt Me! game since its inception and have acquired significant recognition as the source of origin for goods and services branded with the Adopt Me! trademark through their continuous use thereof," particularly since 2020. Ans. at 50, ¶ 50.

Plaintiff also completely discontinued use of the term Adopt Me for plush toys and other offline, physical toys and products in the "mid 2000s," made clear its intent to permanently "shut down" adoptme.com prior to Treetop and Lionfield filing the United States trademark application for Adopt Me!, and failed to police or enforce any purported rights. *See* Ans. at 45, ¶ 35.

Defendants believe it is possible, or even likely, that evidence will be adduced in discovery showing that, rather than actively enforcing any purported rights Plaintiff had in the Adopt Me trademark, it was instead lying in wait as Defendants' business grew in the hopes of disgorging Defendants' increasing profits, a remedy Plaintiff seeks in paragraph 2 of its Prayer for Relief in the Complaint.

At every stage, Defendants have sought to act fairly, while by contrast, it is plausible, or even likely, that Plaintiff waited years to attempt to enforce any purported rights it has in the Adopt

Me mark and grasps at straws to make out a credible allegation that it is engaged in any sort of legitimate business activity or bona fide use of the contested trademark. General principles of fairness should bar Plaintiff from the relief it seeks even if other equitable defenses are unsuccessful.

### F.    Plaintiff Makes No Showing That the Acquiescence Defense Is "Deficient"

Plaintiff next challenges Defendants' acquiescence defense but, again, fails to make the required Rule 12(f) showing that the defense could never prevail under any set of facts. *Markham*, 2017 WL 4685074 at *3. This alone means that Plaintiff's motion to strike should be denied.

Furthermore, it should be noted that "an equitable defense like acquiescence is not ordinarily susceptible to resolution at the pleading stage [because] the defense requires a qualitative examination of the parties' words and conduct and an equitable evaluation of the length of the delay and the degree of prejudice to the defendant if the trademark owner's rights are enforced. This kind of analysis generally requires a factual record." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 941 (7th Cir. 2016).

Looking to the available facts, all of which must be accepted as true, it is clear that despite previous communications between the parties, Plaintiff took no action or otherwise requested Defendants cease use or refrain from future use of the contested mark for nearly four (4) years. *See* Ans. at 45, ¶ 34. Plaintiff also completely discontinued use of the term Adopt Me for plush toys and other offline, physical toys and products nearly 20 years ago in the "mid 2000s," made clear its intent to permanently "shut down" adoptme.com prior to Defendants' United States trademark application for Adopt Me!, and failed to police or enforce any purported rights. *See* Ans. at 45, ¶ 35. Acquiescence denotes active consent to use of a mark. *See Operation Able of Greater Boston, Inc. v. National Able Network, Inc.*, 646 F.Supp.2d 166, 172 (D. Mass. 2009) (citing *Oliva v. Ramirez*, 2007 WL 2436305, at *2 (D.P.R. Aug. 21, 2007)). "Active consent is implied by

16

'conduct on the plaintiff's part that amount[s] to an assurance to the defendant, *express or implied*, that the plaintiff would not assert his trademark rights against the defendant.'" *ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002) (citing *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir. 1970)) (emphasis added). Plaintiff affirmatively acted to induce the belief that it had abandoned its rights to Adopt Me, and its allowance of Defendants' continued use of the contested trademark is tantamount to implied consent. *See Hyson USA*, 821 F.3d at 939 ("The defense prevents the trademark owner from impliedly permitting another's use of his mark and then attempting to enjoin that use *after* the junior user has invested substantial resources to develop the mark's goodwill.").

Again, Plaintiff cannot rely on the doctrine of progressive encroachment because its underlying claim for infringement existed at least as early as 2020. *See Kason Indus., Inc. v. Component Hardware Group*, 120 F.3d 1199, 1206 (11th Cir. 1997) ("[D]elay is to be measured from the time at which the plaintiff knows or should know she has a provable claim for infringement."). Discovery may very well establish that Plaintiff knew of Defendants' Adopt Me! game as early as 2017, when the game first launched. Further, as discussed *supra*, Defendants, in reliance upon Plaintiff's inaction, have suffered economic or "expectation-based" prejudice, as it has made significant investments in the Adopt Me! game and has worked to generate significant brand recognition amongst the relevant consumers. *See* Ans. at 50, ¶ 50.

For the reasons stated above, Plaintiff's motion to strike Defendants' acquiescence defense should be denied.

**G.    Plaintiff Makes No Showing That the Statute of Limitations Defense Is "Deficient"**

Plaintiff next argues that Defendants' statute of limitations defense is improper because trademark infringement claims are governed by laches, not a statute of limitations. Motion at 14.

17

However, the First Circuit has not yet settled whether trademark infringement actions are subject to a laches defense or the most closely analogous statute of limitations under state law. *See Davalos v. Baywatch, Inc.*, 2024 WL 5344434, *9 (D. Mass. Sept. 30, 2024). In light of this legal uncertainty, Defendants pleaded both laches and statute of limitations as alternative defenses, which is entirely proper under a Rule 8(d) analysis, as discussed above.

Moreover, Plaintiff attempts to allege infringement of plush toys based upon purported common law use that it discontinued decades ago. Plaintiff's own statements indicate that such items were offered for sale in the "mid-2000s." Compl. at 5, ¶ 21. As Plaintiff has intentionally intermingled more recent offerings with decades-old offerings in its pleadings, it is entirely possible that this Court will find that certain claims made by Plaintiff are subject to a laches defense while others are more suited for a traditional statute of limitations analysis applying the most analogous state statute. Regardless of the standard applied, it is entirely consistent with allowable pleading standards to claim both laches and statute of limitations, as it cannot be said that Defendants could never prevail under a statute of limitation theory barring at least some of Plaintiff's claims.

### H.    Plaintiff Makes No Showing That the Unclean Hands Defense Is "Deficient"

To justify striking Defendants' "unclean hands" defense, Plaintiff again relies entirely on Defendants' purported failure to allege any supporting facts. Motion at 13. But like Plaintiff's other arguments, this claim ignores the relevant Rule 12(f) standard which requires Plaintiff to show that no set of facts could ever establish the defense. Plaintiff makes no such showing here.

Plaintiff also ignores Defendants' factual allegations bearing on Plaintiff's bad faith, including Defendants' allegation that Plaintiff took "pretextual" steps to mount a trademark infringement action against Defendants, including posting "banner ads" just days before filing the Complaint. Ans. at 45, ¶ 35; Ans. at 50, ¶ 52; Ans. at 54, ¶¶ 73-74. Defendants believe it is possible,

or even likely, that evidence will be adduced in discovery showing that banner ads were conspicuously absent from Plaintiff's website adoptme.com for a period of years but were added mere days before the filing of the Complaint. *See*, *e.g.*, Ans. at 5, ¶ 19; Ans. at 7, ¶ 31; Ans. at 50, ¶ 52; Ans. at 54, ¶ 74. While documentary evidence and testimony are necessary to flesh out this theory, it cannot be said that Defendants failed to allege any facts to support this defense. Thus, as with its other arguments, Plaintiff fails to provide any valid justification for striking Defendants' unclean hands defense.

## IV.    PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS IS MERITLESS

### A.    Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff or counterclaim plaintiff must present facts that make its claim plausible on its face. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court first reviews the complaint and separates conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Then the court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

### B.    Defendants' Counterclaim for Declaratory Judgment of Abandonment Should Not Be Dismissed

Plaintiff argues that Defendants' Declaratory Judgment Counterclaim should be dismissed because it contains "redundant" allegations and "serves no useful purpose." Motion at 16-17. This

claim is without merit. Courts have repeatedly recognized that "a successive user of a mark may seek a declaratory judgment deeming the mark abandoned by its (purportedly) former owner," even though abandonment is also available as a defense. *To-Ricos, Ltd. v. Productos Avicolas Del Sur, Inc.*, 118 F.4th 1, 10 and n. 15 (1st Cir. 2024); *see also Kellogg v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000). Moreover, while the cases cited by Plaintiff stand for the proposition that a court has discretion to determine when the requested relief has "no useful" purpose (*see* Motion at 17-18), Plaintiff has not cited any cases actually dismissing a claim or counterclaim for declaratory judgment of abandonment at the pleading stage on the purported ground that it would serve no useful purpose. A binding judgment from this Court serves the obvious useful purpose of declaring the extent and boundaries of the Parties' trademark rights, and the entire purpose of the Declaratory Judgment Act is to provide such an additional remedy once jurisdiction is found to exist on another ground. 28 U.S.C. § 2201.

Plaintiff also repeats the same fact-based arguments it made against the abandonment defense, asserting that the abandonment claim "contradicts" Defendants' other allegations. Motion at 18-19. But as shown earlier (*see* pp. 2-3, *supra*), these arguments ignore both Rule 8(d)(3) (which expressly authorizes inconsistent claims) and Defendants' own factual allegations about Plaintiff's conduct. Specifically, *inter alia*, (1) Plaintiff abandoned all common law rights to Adopt Me for plush toys and other toys by discontinuing its purported use in the mid-2000s (Ans. at 41, ¶ 8-11), (2) Plaintiff did not establish or maintain common law rights to Adopt Me for online games and related services because Plaintiff admittedly did not "do anything" related to its website adoptme.com (Ans. at 41-42, ¶ 13; Ans. Ex. 7), and (3) even if Plaintiff did establish common law rights, it later expressly abandoned these rights when it issued the "shutdown" notice on adoptme.com in 2020. *See* Ans. at 43, ¶ 21; Ans. Ex. 1. These allegations, taken as true, show that

Plaintiff abandoned the Adopt Me mark and then attempted to establish a "pretext" for its infringement claims in this litigation. Ans. Exs. 1, 7; Ans. at 44-45, ¶ 31; Ans. at 45, ¶¶ 34-35; Ans. at 50, ¶ 52; Ans. at 54, ¶¶ 73-74. These allegations alone refute any claimed "contradiction" between Plaintiff's abandonment of the mark and its subsequent infringement of Defendants' senior mark.

Accordingly, Plaintiff provides no basis for dismissing the Declaratory Judgement Counterclaim under Rule 12(b)(6), and such request must be denied.

### C.     Defendants' Counterclaims of Trademark Infringement Should Not Be Dismissed

Plaintiff next argues that Defendants' Trademark Infringement Counterclaims should be dismissed because they purportedly fail to adequately allege facts showing a "likelihood of confusion" under 18 U.S.C. §§ 1114(1) and 1125(a). Motion at 20-22.

This argument ignores Defendants' pleadings, which adequately allege "likelihood of confusion" under the relevant factors cited by the First Circuit. *Pignons S.A. de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981). These factors include: (1) the similarities between the two marks, (2) the similarities between the products, (3) the channels of trade used by the parties, (4) the strength of the senior user's mark, (5) any evidence of actual confusion, and (6) the alleged infringer's intent in adopting the mark. *Id.* Because the *Pignons* factors merely provide "guidance" rather than a mechanistic formula, a trial court need not consider all of the factors to determine a plausible trademark infringement claim. *Niagara Bottling, LLC v. CC1 Ltd. Partnership*, 381 F.Supp.2d 175, 183 (D.P.R. 2019).

In this case, Defendants' Counterclaims allege or show that (1) the competing marks are substantially similar, if not virtually identical ("Adopt Me" vs. "Adopt Me!"); (2) the parties currently use the marks for similar products (online games); (3) the parties target the same class of

prospective customers (online gamers); (4) Defendants registered the Adopt Me! mark after using it continuously since 2017 and investing heavily in its promotion, thus demonstrating the strength of the mark (*Niagara Bottling*, 381 F.Supp.2d at 183); and (5) Plaintiff began using the Adopt Me mark in an effort to create a "pretext" for its current claims. Ans. at 45, ¶¶ 34-35; Ans. at 50, ¶ 52; Ans. at 54, ¶¶ 73-74. Taken together, these allegations are more than sufficient to meet the *Pignons* test.

Plaintiff nevertheless asserts that the Counterclaims fail to cite any "concrete instances of consumer confusion" or provide any "survey or expert evidence" to establish such confusion. Motion at 22. However, it is well-settled that such evidence is "not essential to finding of likelihood of confusion," particularly at the pleading stage of the litigation. *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006).

Plaintiff also claims that the Trademark Infringement Counterclaims "directly contradict" the Defendants' Counterclaim for a declaratory judgment of abandonment. Motion at 23. But as shown earlier, there is no contradiction at all.  Defendants allege that in 2020 Plaintiff abandoned whatever rights it may have had in the Adopt Me mark but then later began using the mark in a "manner likely to cause confusion" so that Plaintiff could create a "pretext" for its current claims. Ans. at 44-45, ¶ 31; Ans. at 45, ¶¶ 34-35; Ans. at 50, ¶ 52; Ans. at 54, ¶¶ 73-74.

Finally, Plaintiff's argument on "likelihood of confusion" rings especially hollow in light of the multiple allegations of actual "customer confusion" in its own Complaint. These allegations include claims that (1) "Plaintiff received increasing numbers of misdirected communications from users of [Defendants'] Adopt Me!, thus showing '*confusion between Plaintiff's and Defendants' use of the 'Adopt Me' mark;*'", and (2) the increase in "traffic to Plaintiff's AdoptMe.com" showed that "*visitors were mistakenly looking for Defendants' website*." Compl. at 22-23, ¶¶ 125-26

(emphasis added).

Contrary to Plaintiff's claims, these allegations, if true, are evidence of *forward* confusion, showing that *Defendants'* customers were mistakenly visiting Plaintiff's website because of the virtually identical marks.[1] *See Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 71-72 (1st Cir. 2008). This, of course, directly supports Defendants' "customer confusion" assertions. In light of Plaintiff's own allegations, Plaintiff cannot credibly assert that Defendants' Trademark Infringement Counterclaims should be dismissed for failure to allege a "likelihood of customer confusion."

Plaintiff's motion should therefore be denied.

## V.    **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that Plaintiff's motions to strike pursuant to Federal Rule of Civil Procedure 12(f) and to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be denied. In the alternative, Defendants respectfully request leave to amend their Answer and Counterclaims to remedy any deficiency.

---

[1] Without discovery, Defendants have no way of determining whether Plaintiff will be able to prove any of its "likelihood of confusion" allegations at trial. Ans. at 22, ¶¶ 125-26. This is particularly true since "likelihood of confusion" is a fact-intensive issue that focuses on whether the infringing mark "creates a likelihood of confounding an appreciable number of reasonably prudent people exercising ordinary care." *Boston Duck Tours. L.P. v. Super Duck Tours*, 531 F.3d 1 (1st Cir. 2008). Defendants merely note that, at this early stage of the case, Plaintiff should not be heard to criticize Defendants' "likelihood of confusion" allegations when Plaintiff alleges in its own Complaint a likelihood of confusion between the two marks.

Respectfully submitted,


/s/ R. Bart Totten
By:

Bart Totten, Esq. (#5095)
Jeffery K. Techentin, Esq. (#6651)
ADLER, POLLOCK AND SHEEHAN, P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903

Michael D. Adams
(pro hac vice)
Emily A. Nash
(pro hac vice)
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606

*Counsel for Defendants Uplift Games LLC, Treetop Games LLC and Lionfield Investments Ltd*

Dated: March 12, 2025


## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2025, a true copy of the within document was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System.


/s/ R. Bart Totten