**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Impulse Communications, Inc., | : | |
| | : | |
| Plaintiff and Counterclaim Defendant, | : | |
| | : | |
| v. | : | Case No. 1:24-cv-00166-JJM-AEM |
| | : | |
| Uplift Games LLC, Treetop Games LLC and | : | |
| Lionfield Investments Ltd, | : | |
| | : | |
| Defendants and Counterclaim | : | |
| Plaintiffs. | | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS</u>**

Defendants and Counterclaim Plaintiffs Uplift Games LLC, Treetop Games LLC and

Lionfield Investments Ltd (collectively, "Defendants") submit the following Opposition to the

Motion to Compel filed by Plaintiff and Counterclaim Defendant Impulse Communications, Inc.

("Plaintiff"). (Pl. Mem., ECF No. 51).

**I.      INTRODUCTION**

In its Motion to Compel, Plaintiff seeks an Order directing Defendants to conduct a new search

of electronic documents using an expanded list of search terms. (ECF No. 51). The Motion should be

denied for at least four independent reasons.

First, Plaintiff violated both the Court's Scheduling Order and Rule 37(a)(1) by filing the

Motion without conducting the meet-and-confer process mandated by the Court. Second, Plaintiff

waived any objections to Defendants' search terms by failing to raise any issues when Defendants

first disclosed the terms, choosing instead to wait until Defendants completed their electronic

searches more than six months later before making objections. Third, in conducting their searches,

Defendants applied an *expanded* version of the search terms disclosed to Plaintiff, adopting most

of the *same* broadened versions now urged by Plaintiff. Fourth, the relief requested by Plaintiff—

an Order compelling a new search using new search terms—is not reasonably calculated to lead to the discovery of evidence that is both relevant and non-cumulative.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  The Parties' Allegations

The background to Plaintiff's Motion arises from the Parties' competing trademark claims based on the "Adopt Me" mark. In its Complaint, Plaintiff asserts that in the early 2000s it acquired common law rights to the mark in both online games and plush toys. Plaintiff further alleges that Defendants infringed its mark by launching an online game called Adopt Me! in which players (who are largely children) can adopt virtual pets. Plaintiff claims that the worldwide success of Defendants' game resulted in so-called "reverse confusion" in which consumers looking for Defendants' game came to Plaintiff's website instead. (ECF No. 1, ¶¶ 125-126). Plaintiff further claims that it suffered a "reputational" harm as a result of the reverse confusion. (*Id.*).

In their Answer and Counterclaims, Defendants assert that Plaintiff never acquired common law rights and, even if it did, it abandoned them long before Defendants registered the mark in the United States. Defendants further allege that Plaintiff engaged in unfair competition by (1) knowingly infringing Defendants' mark in an effort to create consumer confusion so that Plaintiff could capitalize on the popularity of Defendants' game; and (2) pursuing meritless infringement claims when Plaintiff knew it did not have sufficient commercial use to qualify for common law rights. (ECF No. 47, ¶¶ 76-106). Defendants based these claims on discovery showing that in the last several years Plaintiff realized worldwide revenue of less than $100 a month from its use of the mark and that Plaintiff knowingly used Defendants' mark to "piggyback" on Defendants' popularity. (ECF No. 41-2, at 4-5).

**B.** **Discovery**

As part of discovery, Plaintiff served Defendants with 55 separate document requests, which proved to be especially challenging because Defendants are family-owned companies operating a global business in two countries—the US and the United Kingdom.

To assist in this effort, in August 2025, Defendants engaged Consilio LLC ("Consilio"), a global legal technology firm that specializes in e-discovery matters. (Ex. A). Consilio thereafter spent more than seven weeks to collect and process more than 1,537 GB of data (consisting of more than 1,000,000 documents) from numerous data sources, including Discord, Gmail, Google Suite, corporate email, OneDrive, Slack and Facebook Messenger. (*Id*.).

On October 7, 2025, Defendants provided Plaintiff with a list of the search terms that Defendants intended to use to identify potentially responsive documents. (Ex. B). After receiving this disclosure, Plaintiff never raised any objections to the terms or proposed any modifications. Consequently, Defendants instructed Consilio to use not only the terms disclosed to Plaintiff, but an *expanded version* of the terms to isolate potentially responsive documents from the 1,537 GB of data.

Working with Consilio, Defendants' counsel then reviewed the documents for responsiveness, privilege, and (in the case of UK documents) any personally-identifying data subject to the UK General Data Protection Regulation. For this discovery-related work alone, Defendants incurred fees from Consilio of more than $280,000 (Ex. A) and estimated legal fees of more than $200,000.

On April 9, 2026—more than six months after Defendants disclosed their search terms— Plaintiff sent a letter claiming that the terms were too narrow and that Defendants should conduct additional searches using expanded terms. (ECF No. 51, Ex. E). Plaintiff based this request entirely

3

on the alleged "paucity" of records dealing with alleged "scams"—*i.e.,* cases in which a player of the Adopt Me! game trades a virtual pet or item to another player based on misrepresentations. Plaintiff asserted that this discovery was relevant to its allegation of reputational harm caused by the alleged reverse confusion. On May 1, 2026, Defendants declined to conduct new searches, noting that Plaintiff never objected to the original search terms when Plaintiff reviewed them more than six months earlier. (*Id.,* Ex. F).

After receiving Defendants' response, Plaintiff made no effort to schedule a conference call or take any other steps to resolve the dispute. Nor did Plaintiff schedule an informal conference with the Court. Instead, Plaintiff waited two weeks and then filed a motion to compel new searches for documents responsive to Plaintiff's Request No. 24 which asked for reports of scamming, hacking and similar activities. (ECF No. 51, at 6).

### C.    Other Relevant Facts

Several other facts are relevant to Plaintiff's motion. First, by failing to meet-and-confer with Defendants, Plaintiff did not learn that in conducting their actual searches, Defendants applied an *expanded* version of the search terms disclosed to Plaintiff, using most of the same expanded terms now identified in Plaintiff's motion. (Ex. D).

 Second, by failing to meet-and-confer with Defendants, Plaintiff also did not learn of several developments affecting the volume of responsive documents currently held by Defendants, including (1) in 2022, Defendants adopted a privacy policy of generally maintaining personal data for no longer than 14 months absent a valid business purpose; (2) in August 2023, Defendants retained a new software provider for its "help desk," resulting in a loss of access to the support tickets maintained by the previous provider; and (3) in August 2024, Defendants retained yet another software provider, resulting in the loss of access to the tickets maintained by the second

4

provider (although Defendants preserved the underlying data in an Xcel spreadsheet). (Ex. C).

Third, as part of witness preparation for last-minute depositions, Defendants recently discovered numerous "in-game" player logs (including "scam" and "hacking" complaints) that had been archived in a proprietary "BigQuery" data warehouse maintained by Google. This data was not maintained or monitored by any of Defendants' custodians, and it was therefore never searched or collected by Consilio. Instead, it resided in a third-party server with trillions of lines of other raw server data, and it could not be extracted unless an authorized individual inputted a special query called an "SQL query." (Ex. C).

Finally, in preparing for the depositions, Defendants also located the above-noted spreadsheet containing customer complaint data (including alleged "scams" and "hacks") received in 2023 by the second discontinued software provider. (*Id.*). This data was also not maintained by any of Defendants' custodians, and it therefore was never processed by Consilio.

Based on these developments—and notwithstanding the considerable difficulty in extracting the archived data (*see* Fed. R. Civ. P. 26(b)(2)(B))—Defendants are now preparing additional documents for production next week.

## III.   PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED

Plaintiff's motion should be denied for each of the four independent reasons set forth below.

### A.   Plaintiff's Motion Violates Both this Court's Scheduling Order and Rule 37(a)(1)

In its initial Scheduling Order, this Court made clear that neither Party can file a discovery motion without first scheduling an "informal conference" with the Court:

> No discovery motions shall be filed until after the party in good faith tries to resolve the matter with opposing counsel. If that does not resolve the dispute, *the party must first have an informal conference*

5

*with the Court*, which can be arranged by contacting the judge's Case Manager at the direct extension listed below.

(ECF No. 30) (emphasis added).

By requiring a judicial conference before filing a discovery motion, the Scheduling Order adds a new obligation to the existing requirements of Fed. R. Civ. P. 37(a)(1). Under that Rule, a movant must certify that it has conferred in good faith with the opposing party in an attempt to obtain discovery without court action. "The purpose of a good faith conferral is to enable the parties to narrow, if not resolve, their dispute" and thereby obviate the need for court intervention. *A.J. Amer Agency, Inc. v. Astonish Results, Inc.*, 2013 WL 9663951, at * 2 (D.R.I. Feb. 25, 2013). "The costs of litigation are too high and there are too many demands on the court's time to adjudicate needless motions to compel that might not have been filed if counsel put forth a good faith effort." *Id.*

Accordingly, Rule 37(a)(1) is not an "empty formality," and it cannot be satisfied "merely by including copies of correspondence that discuss the discovery at issue." *Id.* "Nor do hostile emails back and forth that reiterate discovery demands satisfy the meet and confer requirement." *Id.* Rather, the Rule requires a "*substantive communication*" as part of a good faith effort to resolve the dispute. *Id.* (emphasis added). Consequently, a failure to comply with the Rule is a sufficient reason to deny a motion to compel. *Id.*; *Bucceri v. Cumberland Farms, Inc.*, 2020 WL 58428, at *3 (D. Mass. Jan. 6, 2020); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996).

In this case, Plaintiff violated both the Scheduling Order and Rule 37(a)(1). Plaintiff made no effort to schedule even a single conference call with Defendants, much less set up an informal conference with the Court. Instead, after a single exchange of emails between the Parties—and with no further notice to Defendants—Plaintiff waited two weeks and then filed a motion seeking judicial intervention.

These violations are particularly consequential here. If Plaintiff had complied with the Scheduling Order, it would have learned, at a minimum, that Defendants conducted their searches using an expanded version of the original search terms, including most of the expanded terms now requested by Plaintiff. (Ex. D). Plaintiff would have further learned that the search terms used by Defendants did not result in the alleged "paucity" of documents dealing with so-called "scams." Rather, the number of responsive "scam" documents resulted largely from Defendants' personal information retention policies, the loss of access to data collected by discontinued software vendors, and the storage of the "in-game" logs in an archive maintained by a third party.

Equally important, if Plaintiff had engaged in a good faith meet and confer, it is highly probable that the Parties would have resolved the dispute. This is particularly true since (1) Defendants ultimately applied expanded search terms that are virtually identical to most of the terms now requested by Plaintiff; and (2) the archived documents scheduled for production next week will effectively moot the entire justification for Plaintiff's motion—*i.e.*, the alleged "paucity" of documents dealing with "scam" and "hacking" complaints. (ECF No. 51, at 9).

Accordingly, Plaintiff's failure to conduct a meaningful meet and confer almost certainly prevented a resolution of the dispute without the need for judicial intervention. For this reason alone, Plaintiff's motion should be denied. *A.J. Amer Agency,* 2013 WL 9663951, at *2; *Bucceri*, 2020 WL 58428, at *3; *Hasbro*, 168 F.R.D. at 101.

**B.    Plaintiff Waived Any Objections to Defendants' Search Terms**

Plaintiff not only failed to comply with the Court's Scheduling Order, but also waived any and all objections to the search terms used by Defendants. As noted earlier, on October 7, 2025, Defendants provided Plaintiff with a complete list of the search terms Defendants intended to use to search for responsive documents. (Ex. B). At that time, Plaintiff raised none of the objections it

7

makes now, even though Plaintiff could have easily done so. For example, Plaintiff could have easily made its current "synonym" objection (*e.g.*, using synonyms for "theft" such as "steal" or "rob") or its claim that the use of "Adopt Me" is "unnecessarily limiting." (ECF No. 51, at 10).

Instead, Plaintiff did nothing at all. As a result, Defendants proceeded to instruct their discovery vendor to process more than one million documents using the disclosed search terms (as well as multiple variations of the word "scam"), all at considerable burden and expense to Defendants.

As courts have found in similar cases, this course of conduct constitutes a waiver of Plaintiff's objections. For example, in *Stevens v. U.S. Dep't of State*, 20 F.4th 337 (7th Cir. 2021), the plaintiff made no objections to the government's continued use of certain provisionally-agreed search terms until months after the government's production closed, even though the plaintiff had several opportunities to do so. *Id.* at 341-42. On these facts, the Seventh Circuit held that the plaintiff's conduct constituted an "acquiescence" to the government's continued reliance on the search terms and thus effected a waiver. *Id.*

The same logic applies here. By failing to raise any objections to Defendants' search terms until Defendants completed their search more than six months later—even though Plaintiff had multiple opportunities to do so—Plaintiff acquiesced to Defendants' reliance on the disclosed terms and thus waived its objections. This provides a second alternative ground for denying Plaintiff's motion.

C.    **Defendants Used an Expanded Version of Their Original Search Terms that Closely Matched the Terms Now Urged by Plaintiff**

As noted earlier, Defendants ultimately elected to apply an expanded version of the search terms originally disclosed to Plaintiff. (Ex. D). Under this expanded version, Defendants searched for documents responsive to Request No. 24 using the following: "Adopt Me AND (scams OR

scam OR scammed OR illegal OR hacking OR hacked OR theft OR stole OR stolen OR sex or sexual activity)." (*Id*.).

This expanded version adopted many of the *same terms* now urged by Plaintiff, including multiple versions of "scam" ("scam," "scams" or "scammed"), "hack" ("hacking" or "hacked"), "stole" ("stole" or "stolen") and "sex" ("sex" or "sexual activity"). (*Compare* Ex. D *with* ECF No. 51, at 11). Indeed, the only notable difference between the two sets of terms is that Defendants required the term "Adopt Me" as part of the search, which is certainly reasonable in a trademark case involving the Adopt Me! game and the Adopt Me! mark. In any event, this difference is too insubstantial to warrant an Order compelling Defendants to re-do their entire search of electronic records.

> **D.**      **Plaintiff's Requested Relief Is Not Reasonably Calculated to Lead to the Discovery of Non-Cumulative Relevant Evidence**

In its motion, Plaintiff claims that Defendants' original search terms are unreasonably deficient based *solely* on the alleged "paucity" of scam and hacking documents. (ECF No. 51, at 9). But as shown above, Defendants actually used an expanded version of their original search terms, and, in any event, the number of responsive scam documents generally resulted not from the quality of the search terms, but from Defendants' 14-month personal information retention policy, the loss of access to data collected by discontinued software vendors, and the storage of the "in-game" logs in a digital archive maintained by a third party. As a result, there is no reason to believe that compelling Defendants to re-run the searches using Plaintiff's search terms will lead to the discovery of non-cumulative and relevant evidence.

This is particularly true in light of one other point: Plaintiff argues that the requested documents are relevant to show an injury to its "business reputation" for purposes of its state and federal trademark claims. (ECF No. 51, at 7-8). However, the requested documents are all *internal*

9

documents having no public dissemination—and therefore having no possible relevance to Plaintiff's claims of *reputational* injury.

Accordingly, as a fourth alternative ground for denying the Motion to Compel, Plaintiff's requested relief—an Order directing Defendants to re-run searches using Plaintiff's search terms—is not reasonably calculated to lead to the discovery of evidence that is both non-cumulative and relevant.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's Motion to Compel.

Respectfully submitted.

UPLIFT GAMES LLC
TREETOP GAMES LLC
LIONFIELD INVESTMENTS LTD
By and Through Their Attorneys,

/s/ Jeffrey K. Techentin
R. Bart Totten, Esq. (#5095)
Jeffery K. Techentin, Esq. (#6651)
Adler, Pollock and Sheehan, P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903

Michael D. Adams
(pro hac vice)
James R. Ferguson
(pro hac vice)
Emily A. Nash
(pro hac vice)
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606

Dated: May 29, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of May 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's CM/ECF system and the filing is available for viewing and downloading from the Court's CM/ECF System.

/s/ Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
Counsel for Defendants